**UNITED STATES of America,
Appellee,**

v.

**Gregory COMULADA, Appellant.**

**No. 127, Docket 28742.**

United States Court of Appeals
Second Circuit.

Argued Oct. 9, 1964.

Decided Jan. 15, 1965.

Certiorari Denied April 26, 1965.
See 85 S.Ct. 1343.

Michael W. Mitchell, Asst. U. S. Atty., Southern Dist. of New York, New York City (Robert Morgenthau, U. S. Atty., and John S. Martin, Jr., Asst. U. S. Atty., on the brief), for appellee.

Albert J. Krieger, New York City, for appellant.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

Gregory Comulada's appeal from his conviction and fifteen-year sentence [1] for selling narcotics in violation of 21 U.S.C. § 174 raises two questions:

(1) Whether destruction of notes by a narcotic agent after the matter covered by the notes was incorporated into his official report required the striking of his testimony under 18 U.S.C. § 3500; and

(2) Whether he was denied a fair trial because of testimony that the informer was not available, in the light of the government's failure to call the informer as a witness.

The government's testimony showed that on December 20, 1961, Agent Coursey went with the informer, Saul Scott, to Comulada's furniture store at 945 Westchester Avenue in the Bronx. Scott introduced Coursey as his cousin Irving from Philadelphia. When Coursey said that he wanted to buy two ounces of heroin, Comulada agreed to sell him the heroin for $1,000. After Coursey paid Comulada the money in cash, Comulada made a phone call and then asked Coursey and Scott to take a ride and come back. When they returned and drove up to the curb, Comulada went out to their automobile and handed to Coursey a brown paper bag which, according to Coursey and the government chemist, turned out to contain approximately one ounce of heroin. Agent Leya's testimony concerning his surveillance of the movements of Coursey and Scott outside of Comulada's store corroborated Coursey's account. Comulada did not take the stand and called no witnesses.

Agent Coursey's formal report and his daily reports were made available to defense counsel. It was developed on cross-examination that Coursey had made notes on 3 x 5 cards which he testified he destroyed when he made up his report on January 8, 1962. Coursey had taken the notes as a precautionary measure; he thought that he had referred to them in preparing his report. He had incorporated everything in the notes in his report and destroyed the cards as he needed them no longer. Defense counsel then sought a further hearing before the judge, without a jury, into the destruction of the cards. Judge Cooper denied the application on the ground that the examination had not established sufficient basis for any further inquiry. At the close of the government's proof,

---

1. As Comulada had a previous federal conviction for violation of the narcotics laws he was sentenced as a second offender. 21 U.S.C. § 174.

Judge Cooper denied a defense motion to strike Coursey's testimony on the ground that his destruction of the notes was a violation of 18 U.S.C. § 3500(d).

■■ There was no need for further *voir dire* examination of Coursey regarding his destruction of the cards. Coursey's testimony and the argument of counsel had not developed any reason why the cards should have been kept after they had served their sole purpose of recording such information as Coursey might have needed when making up his formal report; nor were there any matters which required further inquiry. Notes such as Coursey made on his 3 x 5 cards obviously serve only a limited and temporary purpose of recording details which at the time the recorder believes might have some value when a formal report is drafted at a later time. There is nothing in 18 U.S.C. § 3500 which requires that all memoranda made in the course of an investigation should be kept and preserved. Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); United States v. Greco, 298 F.2d 247, 250 (2 Cir.), cert. denied 369 U.S. 820, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962); United States v. Thomas, 282 F.2d 191, 194 (2 Cir.1962). Indeed, every consideration of efficiency and economy would seem to require the destruction of such fragmentary memoranda as soon as they are no longer needed. Where every sensible motive supported destruction and no reason was advanced to suppose that the destruction was for an improper purpose, it would have been a needless waste of time to permit a *voir dire* inquiry.

■ As to the whereabouts and availability of Scott, the record does not support the defense claim that Leya's testimony was misleading and that it deprived Comulada of a fair trial.

Coursey testified on cross-examination on October 1 and 2, 1962 that he last saw Scott in February 1962, and that he did not know Scott's whereabouts. He said he knew that Scott had a criminal record for narcotic violations. Leya also testified that he had not seen Scott since February 1962; so far as he knew, Scott had not been in contact with the Bureau of Narcotics since February 1962. Leya further testified that in late September 1962 he had inquired of Agent Costa concerning Scott's whereabouts and that he inquired about Scott at "his last address," the Manhattan Towers Hotel. Apparently Agent Costa had given him this information. Leya testified that Scott no longer resided there.

On this appeal, appellant's counsel calls our attention to the fact that in November 1962, one month after Comulada's trial, at the trial of John Cimino and Joseph D'Ercole in the Southern District of New York on narcotic charges, the whereabouts of Scott was again probed by defense counsel at trial. The manager of the Manhattan Towers Hotel testified that Scott had lived in the Hotel from October 21, 1961 until the date of the manager's testimony on November 19, 1962, but from the early part of 1962 he was registered under the name of "Fields."

Counsel points out that Agent Costa testified at the Cimino trial that Scott had last been utilized by the Bureau in August 1962, that Costa had given Scott $200 at the end of August, and that the last time he had seen Scott was at "the end of the month of August or early September" of 1962. Costa said that Scott tried to reach him by telephone at his office in early October, but that he, Costa, was unavailable at the time; efforts by Costa and other agents to contact Scott during trial failed. See United States v. Cimino, 321 F.2d 509, 516 (2 Cir.1963) (dissenting opinion), cert. denied, D'Ercole v. United States, 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416, Cimino v. United States, 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964).

While the testimony at the Cimino trial indicates that Scott's residence may have been known to Costa as late as September 1962, there is nothing in the Cimino testimony which would indicate that Costa deliberately misled Leya as to his knowledge of Scott's whereabouts at the time Leya asked him, or that Leya or Cour-

sey misstated their knowledge when testifying at Comulada's trial.

It is not clear what Comulada would have done with the information as to Scott's whereabouts if that information had been brought out at trial. The defense never stated that it wished to call Scott as a witness. It was obvious from the testimony of Coursey and Leya that the man who knew most about Scott was Costa, but defense counsel did not even ask that Costa be called as a witness. Nor did the defense ask that the Narcotics Bureau produce its records as to Scott's addresses and the contacts of the Bureau with Scott. In any event, the defendant did not call upon the government to produce Scott. Nor did he ask the court to call him as the court's witness.

■ From what is before us, there is no reason to believe that Scott would have done more than duplicate the testimony already given by Coursey and Leya.[2] On this point, Judge Cooper correctly charged the jury that they need not draw any inference from Scott's failure to testify, but that they could draw any inference they desired, including the inference that he would have testified against the government.

■ Mere allegations of perjury or mistake are generally not proper subjects for appellate consideration. Resolution of conflicting statements of fact are within the competence and province of the trial court. Rule 33 of the Federal Rules of Criminal Procedure provides that within two years after final judgment the defendant may move for a new trial based on the ground of newly discovered evidence in the district court. If the case is on appeal, the district court may certify that if the case is remanded, a new trial will be granted, and the appellate court will generally comply by remanding the case. Rule 33, supra; United States v. Minkoff, 181 F.2d 538 (2 Cir.1950); see also United States v. Smith, 331 F.2d 145 (6 Cir.1964) (two cases).

■ The judgment in the instant case was entered on October 31, 1962, thus giving Comulada until October 31, 1964 to make a motion under Rule 33 if he so desired. It is probable that defendant and his counsel were not aware of Costa's testimony at the Cimino trial at the time it was given. The decision of this court in the Cimino case was handed down on July 23, 1963 and appeared several months later in the Federal Reporter (321 F.2d 509). It was headlined and printed in full on the first page of the New York Law Journal, October 24, 1963, vol. 150, no. 82. Thus it would seem that there was more than adequate time for Comulada to make the appropriate application for a new trial within the generous time requirements of Rule 33.[3]

However, as we noted above, there is no support in this record for the claim that the government deliberately misled the defense or that the lack of knowledge on the part of Leya and Coursey misled the defense, or deprived the defense of evidence which would have pointed to the innocence of Comulada.

2. Apparently defense counsel was aware after the publication of our opinion in the Cimino case, decided July 23, 1963, of Costa's testimony concerning Scott, but so far as appears no effort was made to locate Scott.

3. At such a hearing, the defendant would have to show that the witness whose testimony he sought to introduce was not available at trial (Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed. 2d 1 (1956)), that the defendant proceeded with due diligence to locate the witness during the trial (Brown v. United States, 333 F.2d 723, 724 (2 Cir. 1964)), and that the witness would give testimony which would directly point to the innocence of the defendant. United States v. Soblen, 301 F.2d 236, 242 (2 Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962). Even taking the facts as alleged by Comulada, a new trial would not be warranted.

Even after the two year period has elapsed, a motion under 28 U.S.C. § 2255, addressed to the district court, could bring on a proceeding wherein conflicting testimony on such issues could be resolved.

We note that in case after case, in appeals from convictions for trafficking in narcotics, we hear arguments regarding the government's failure to call the informer or special employee. See e. g., United States v. D'Angiolillo, 340 F.2d 453 (2 Cir.1965); United States v. Cimino, supra; United States v. Glaze, 313 F.2d 757 (2 Cir.1963); United States v. Colletti, 245 F.2d 781 (2 Cir.), cert. denied sub nom. Russo v. United States, 355 U.S. 874, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957); see also United States v. Lanza, 329 F.2d 422 (2 Cir.1964). It seems to be defense strategy to bring out facts from which it can be argued that the government or the court should have called the informer as a witness. Almost never is there a genuine effort to find the witness or to call him even when it is certain that he is available and subject to process. See United States v. D'Angiolillo, supra. We think that this is another such case.

Affirmed.