**UNITED STATES of America,**
**Appellee,**

v.

**Robert JONES, Appellant.**

**No. 236, Docket 29942.**

United States Court of Appeals
Second Circuit.

Argued Jan. 26, 1966.

Decided March 17, 1966.

John G. Lipsett, New York City (Jackson, Nash, Brophy, Barringer & Brooks, (Anthony F. Marra, New York City), for appellant.

John S. Allee, New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Neal J. Hurwitz, Asst. U. S. Atty., of counsel), for appellee.

FRIENDLY, Circuit Judge:

Robert Jones appeals from a judgment of the District Court for the Southern District of New York convicting him of narcotics violations after trial by Judge Tenney without a jury. The indictment charged Jones and one Ramon Rivera with two sales of heroin on January 16 and 27, 1964. Each transaction was the subject of two substantive counts, one under 21 U.S.C. §§ 173 and 174, the other under 26 U.S.C. §§ 4705(a) and 7237(b); a fifth count charged a conspiracy to violate the latter provisions. After trial, in which Jones' sole defense was entrapment, the judge convicted Jones and acquitted Rivera on all counts; he sentenced Jones to concurrent five-year terms, the minimum permitted under the statutes.

The Government's case was presented through three narcotics agents, Paschal, Ferro and Griffin. Of these Paschal alone had dealings with Jones; his story was generally corroborated by the other agents so far as their opportunity for surveillance allowed:

On the evening of January 15, Paschal and a special employee, Cunningham, went to the Triboro Bar at 100th Street and First Avenue, New York City, where Cunningham introduced Paschal to Jones. Paschal told Jones of his desire to buy narcotics, indicating that he wanted "half a piece" as a sample. Jones replied "I have some of the best stuff in the neighborhood. You don't have to worry about the quality; I never had any complaints about it." He demanded $150, which he received on the spot, and left the bar. Shortly afterwards he reentered and, giv-

Before FRIENDLY and HAYS, Circuit Judges, and BLUMENFELD, District Judge.*

* Of the District of Connecticut, sitting by designation.

ing back the money, explained he had not been able to get the narcotics. He asked Pascal to drop around the next evening. Paschal returned by himself and again gave Jones $150. After comings and goings not here material, Paschal accompanied Jones to his apartment at 405 East 100th Street. A man came in and was introduced as "Benny";[1] he handed a package of narcotics to Jones who handed it to Paschal. The agent promised that if the merchandise was good, he would return the following week.

As to the second sale Paschal testified that on the evening of January 27 he went to the Triboro Bar looking for either Benny or Jones. Soon Benny arrived. After some negotiations Paschal gave $175 to Benny who left to get the stuff. After several hours he returned and told Paschal the narcotics were in Jones' apartment; Paschal went there, where Jones handed him an envelope containing heroin.

In his defense, Jones did not dispute the sales but maintained that his participation resulted from the improper persuasion of Paschal and, to a larger extent, of the special employee, Cunningham. He sought to negative the strong inference of propensity flowing from the agent's testimony by insisting he had been put under pressure by Cunningham, allegedly a friend of five years standing. Jones recited that on two occasions in November 1963 Cunningham had asked where he could get some narcotics and Jones had replied he did not know. Early in December, Cunningham came to Jones' apartment, this time with Paschal, and asked for help in procuring drugs, again without success. A few days later Jones met Cunningham at the Triboro Bar. When the same propositioning led to the same negative result, Cunningham brought up the subject of a loan he had made to Jones several years before; Jones said he was in no position to pay

it. After still another unsuccessful try a week later, Cunningham and Paschal met Jones at the bar, and, after again being turned down, Cunningham suggested that if Jones could get some narcotics, the debt might be cancelled.

According to Jones, these six encounters provided the background for the episodes of January 15 and 16. His story of the first evening was that Cunningham, who had entered the bar with Paschal, asked whether he had located a source; that Jones, having previously made some arrangement with one "Manny Colon," replied that he had and left the bar to arrange for the sale; and that he returned with the report that his source "wasn't doing nothing" that night. Although this story reconciled reasonably well with Paschal's (save for the absence of any reference to receiving $150, and Jones' insistence that he had met the agent several times before), the account of the following evening was sharply different. This time, according to Jones, Cunningham came to his apartment and escorted him to the bar, where Paschal asked if he had narcotics. Then Jones went to Manny's house, picked up a package of narcotics, took it to his apartment, met Cunningham and Paschal in the bar, took them home, and handed Cunningham the heroin in exchange for $150. When Cunningham said they would probably be back in a week or two, Jones remarked: "Well, I don't know about that." He claimed this was his first sale of narcotics.

Turning to the second episode, Jones stated that during the week following the sale Cunningham saw him at his job and said that although the quality of the first package had been only "so-so," if Jones could make the contact again they would be even on the debt. The two met at the bar on what Jones insisted was January 26, and Cunningham asked for another package. Jones went to Manny's house

---

1. The agents identified the defendant Rivera as Benny but the judge was not convinced of the identification beyond a reasonable doubt. Since the evidence showed that Jones had obtained narcotics from someone, Rivera's acquittal was not inconsistent with Jones' conviction for conspiracy. See Rogers v. United States, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

but was told to come back later; on the second visit he picked up a package, took it to his own apartment and returned to the bar where he found Paschal but not Cunningham. The agent went with Jones to his home, and was given the narcotics for the same $150 price as in the first transaction.

On the motion of Jones' assigned counsel, the court requested the Government to make every reasonable effort to produce Cunningham as the court's witness. He was found in South Carolina, served with a subpoena, and brought to New York. However, after having interviewed Cunningham, counsel for Jones announced that his "considered and determined conclusion" was that he did not wish to call Cunningham as a witness; counsel for Rivera made a similar statement, both defendants rested, and that was the end of the matter.

On appeal, in addition to his principal argument that the judge applied an erroneous standard with respect to the burden of proof on entrapment, Jones advances several lesser challenges directed to the failure to call the special employee as a witness, the refusal to strike Paschal's testimony under the Jencks Act, 18 U.S.C. § 3500, and the preclusion of a line of questioning in the cross-examination of one of the agents.[2] The claim that the Government or the court was bound to call Cunningham as its witness is answered by United States v. D'Angiolillo, 340 F.2d 453, 455 (2 Cir.), cert. denied, 380 U.S. 955, 85 S. Ct. 1090, 13 L.Ed.2d 972 (1965), which expressly rejected any such duty, recognizing only that "where the informer's testimony may be relevant to the defense,

the defendant is entitled to his name, to such information as the government may have concerning his whereabouts, and to reasonable cooperation in securing his appearance." Indeed, the instant case is *a fortiori* since, unlike *D'Angiolillo*, here the defendant's trial counsel gave no indication that he wanted the special employee called by anyone. The contention that the Jencks Act required striking Paschal's testimony because of his destruction of jottings as to the time of events on January 16, which he incorporated in his full report, is answered by United States v. Comulada, 340 F.2d 449 (2 Cir.), cert. denied, 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965), where this court observed that nothing in the statute requires preservation of all memoranda made in the course of an investigation; since these scraps of paper plainly were not within the Jencks Act, in the absence of any indication that their destruction was for an improper purpose or that the data was not in fact preserved in the formal report, we fail to see why the case should stand worse because Paschal threw them away as a result of his own determination rather than in accordance with regular procedure established for all investigations. But cf. Killian v. United States, 368 U.S. 231, 242, 82 S. Ct. 302, 7 L.Ed.2d 256 (1961).

We find more merit in the argument that the court ought to have permitted cross-examination of Agent Griffin, to whom Cunningham was responsible, as to whether the Government was supplying Cunningham with narcotics, whether Cunningham was to be rewarded for any successful prosecution he initiated, and whether Griffin had spoken

---

2. In addition, in the course of a general attack on the Government's conduct in promoting the commission of the crime and in proving its case, appellate counsel pointed out that on the Government's own evidence the sales were made in Jones' home, to which Paschal gained access under the false guise of a would-be purchaser. After this appeal was argued, the Supreme Court granted certiorari, 382 U.S. 1024, 86 S.Ct. 646, 15 L.Ed.2d 538 (Feb. 1, 1966) (No. 811), to con-

sider the correctness of the First Circuit's holding that such action was not an unlawful search and seizure, Lewis v. United States, 1 Cir., 352 F.2d 799 (1965). Since in this case no motion was made to suppress the narcotics and no objection was offered to their admission in evidence or to testimony about their delivery, we need not consider the point. See United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, 86 S.Ct. 887 (1966).

to him about Jones after January 16. As the case ultimately stood, it was relevant for Jones to establish what incentives Cunningham had to "deliver" a subject for prosecution; benefits conferred or promised and conversations between Griffin and Cunningham, no matter what their date, might conceivably have cast some light on the degree of pressure Cunningham had exerted. We do not look with favor on attempts by prosecutors to restrict full examination of the Government's relations with special employees when this is relevant to the question of inducement of the illegal conduct. In this case, however, the significance of the inquiry was not apparent prior to Jones' testimony since, on the evidence submitted by Paschal, Cunningham's role appeared to have been limited to introducing the agent to an eager seller; defense counsel did not explain to the judge how the testimony to be given by Jones might make the questions to Griffin more material than they then appeared. If the defense had renewed the point after Jones' testimony by seeking to have Griffin recalled for cross-examination, the judge might well have altered his adverse ruling. But even if the ruling had been erroneous when made, we would not consider reversal required; particularly in view of the defense decision not to call Cunningham, these questions do not appear sufficiently likely to have developed evidence that would have significantly weakened the Government's case.

Jones' principal point is that the trial judge, in declaring that "the defense of entrapment has not been proved," improperly placed on the defendant the burden not only of showing government initiation of the crime but of establishing that the unlawful conduct was the result of government inducement. In his oral opinion, Judge Tenney recounted Jones' story as to alleged inducements by Cunningham and Paschal before January 15, but declared he did not attach any weight to the testimony with respect to the agent's participation prior to that time. Turning to Cunningham's conduct, the judge stated his belief that the special

employee played no part in either of the two sales, that "his sole activity" in the case was the introduction of Paschal to Jones, and concluded, "I do not believe he either coerced or entrapped the defendant Jones." In addition, the judge twice said that the defense of entrapment had not been proved.

Jones attacks the judge's opinion, particularly the two statements last mentioned, on the basis that the only burden a defendant claiming entrapment can ever have is to show "inducement" in the narrow and uncolorful sense of government initiation of the crime; and here any such burden was discharged by the Government's own evidence that Paschal asked Jones to sell him narcotics, and the burden of showing propensity, including the overcoming of defense evidence of undue pressure, was on the prosecution. See United States v. Sherman, 200 F.2d 880, 882–883 (2 Cir. 1952); United States v. Pugliese, 346 F.2d 861, 862–863 (2 Cir. 1965). Building on these correct premises, Jones argues that the judge's general remarks on proof of entrapment indicate improper placing of the entire burden on the defense, rendering invalid any findings that the crime did not result from undue government pressure.

Although the argument does credit to the ingenuity of assigned counsel, he has used too high-powered a microscope. It is exceedingly desirable that, before pronouncing judgment against a defendant, a judge to whom a criminal case has been tried should make findings, whether oral or written, rather than simply announce a conclusion of guilt, see United States v. Rosengarten, 357 F.2d 263, 266 n. 4 (2 Cir. 1966), even when no request under F.R.Cr.P. 23(c) has been made. Appellate courts must be careful not to discourage the commendable course here followed by reading an oral opinion as they would a corporate indenture. A better phrasing, to be sure, was that of the late Judge Dawson when he said he was "convinced beyond a reasonable doubt that the defense of entrapment does not stand up," see United States v. Trimmings, 334

F.2d 234 (2 Cir. 1964). Yet to fault the court for not indulging in this precise elaboration would be to spin gossamer. What emerges clearly from Judge Tenney's opinion is that, having seen the witnesses during the trial and then having taken time to analyze their testimony, he simply did not believe Jones' tailored explanation of the events of January 16 and 27 as against the simpler version of Paschal, largely corroborated as it was by Griffin and Ferro, and also did not believe that Cunningham played any role other than simply introducing Paschal. The conduct ascribed to Jones by the agent, particularly the salesmanship displayed in vouching for the quality of his wares, was ample to sustain a finding of propensity. Compare Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). Not regarding the case as in any way close, the judge found no occasion for nicety in expression as to burden of proof.

This opinion has already indicated the court's indebtedness to John G. Lipsett, Esq. for an able presentation on Jones' behalf.

Affirmed.