**UNITED STATES of America,
Appellee,**

v.

**Haywood WILLIAMS, Appellant.**

**No. 518, Docket 29486.**

United States Court of Appeals
Second Circuit.

Argued June 7, 1965.

Decided April 26, 1966.

Certiorari Denied Oct. 10, 1966.

See 87 S.Ct. 84.

David M. Dorsen, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty., Michael W. Mitchell, Asst. U. S. Atty., for appellee.

Albert J. Krieger, New York City, for appellant.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

**WATERMAN, Circuit Judge:**

Appellant Haywood Williams and his codefendant Mills Skinner were tried under an indictment charging violations of the federal narcotics laws, 21 U.S.C. §§ 173–174. The first count charged that from April 1, 1963 forward Williams and Skinner conspired to and did receive, conceal, sell, and facilitate the transportation, concealment, and sale of approximately 17.70 grams of illegally imported heroin. The overt acts set forth as furthering this alleged conspiracy, and a substantive offense they were charged with in the second count, related to a transaction which occurred on April 26, 1963, involving the sale of approximately 17.70 grams of heroin hydrochloride to one John Coursey, an agent of the Federal Bureau of Narcotics, which was handed to Coursey by appellant. Two further counts in the four count indictment, counts three and four, charged appellant with illegal possession and transportation of .32 grams of illegally imported cocaine on November 5, 1963.

On December 1, 1964, after a five day trial before a judge sitting without a jury, Williams and his codefendant were found guilty as charged on counts one and two, and Williams, as a second offender, was sentenced to serve a term of 10 years. He was acquitted on counts three and four. Though both defendants timely filed notices of appeal, the appeal by Williams is the only one thus far brought forward, and only his rights are considered here.

Upon appeal Williams maintains that certain inculpatory statements he made to federal officers after his arrest and before he was brought before the U. S. Commissioner were erroneously admitted into evidence at his trial because he was denied the assistance of counsel and thus deprived of rights secured to him under the Sixth Amendment to the Constitution. He further claims that the entire testimony of Narcotics Agent Kreppein concerning the substance of the interviews the agent had with appellant should be struck pursuant to subsection (d) of the Jencks Act, 18 U.S.C. § 3500(d), because Kreppein could not produce at trial the informal notes he took while eliciting the statements from appellant.[1]

**I.**

We turn first to appellant's contention that the admission at trial of certain post-arrest, prearraignment statements made by him to various federal officers who failed to warn him of his right to counsel violated his Sixth Amendment rights as explicated by the Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Recently the decisions of the Court in *Escobedo* and other cognate cases dealing with the Sixth Amendment right to counsel have been exhaustively

---

1. Appellant does not question the sufficiency of the evidence presented during the Government's case-in-chief. Putting aside the issues discussed in the body of this opinion and viewing the evidence as we must in the light most favorable to the Government, United States v. Tutino, 269 F.2d 488 (2 Cir. 1959) it is clear that the conviction should be affirmed.

interpreted and applied in several cases by our court sitting *in banc*.[2] E.g., United States ex rel. Stovall v. Denno, 355 F.2d 731 (2 Cir. 1966); United States v. Drummond, 354 F.2d 132 (2 Cir. 1965); United States v. Cone, 354 F.2d 119 (2 Cir. 1965); United States v. Robinson, 354 F.2d 109 (2 Cir. 1965).[3] We of the present panel, irrespective of our individual positions expressed in our separate opinions in these *in banc* cases, believe that, for the time being, we should accept these recent pronouncements by a majority of our court on the "right to counsel" issue. Cf. United States v. Kelly, 349 F.2d 720, 778 (2 Cir. 1965). We reserve to ourselves our several approaches to this issue,[4] and await further guidance from the Supreme Court.[5]

Appellant was arrested by Narcotics Agents Kreppein and Bailey at the corner of 129th Street and Seventh Avenue in Manhattan at 3 A.M. on November 5, 1963. The arrest was for the sale of the 17.70 grams of heroin made to Agent Coursey on April 26, 1963.

When arrested Williams was immediately informed by Agent Kreppein that he "was under arrest in violation of the federal narcotic laws and anything he said could be used against him in one straight blush."[6] The Government concedes that he was not advised that he was entitled to the assistance of counsel before speaking further with the federal agents. A ten to fifteen minute conversation between the agents and appellant then ensued while the three sat together in the front seat of appellant's automobile. During the course of this conversation, Bailey, who was seated on the right or passenger side of the front seat, discovered several cocaine capsules on the floor of the automobile. Kreppein testified that appellant at that time admitted the cocaine was his.[7] Kreppein also testified that after the cocaine had been found appellant stated "that he wished to cooperate with us in initiating further cases involving narcotic violators * * * if we would forget about the arrest." When the agents informed appellant that they could not overlook the arrest appellant promptly withdrew his offer of cooperation. Appellant made no request for counsel during the course of his scene-of-arrest conversation. He was then driven to the Federal House of Detention on West Street in lower Manhattan where he was confined until about 9:30 A.M. on that same day.

At approximately 9:30 A.M. Kreppein took Williams from the House of Detention to the office of the Narcotics Bureau in Manhattan "for processing." Kreppein testified that a second conversation took place there and that appellant initiated this second conversation by asserting he had never sold narcotics. Kreppein then made it clear to appellant that appellant was not being arrested for possessing the cocaine he had admitted

**2.** Judge Feinberg was not then a member of our court and did not participate in the *in banc* deliberations.

**3.** On May 26, 1965 it was voted to consider these cases *in banc*. The within appeal was argued on June 7, 1965, with decision to be reserved until after the *in banc* cases had been finally disposed of.

**4.** Judge Smith dissented in every one of these *in banc* cases. Judge Friendly dissented in *Stovall*, concurred in a separate written opinion in *Cone* and *Drummond*, and concurred without opinion in *Robinson*. Judge Waterman dissented in *Stovall*, *Drummond*, and *Robinson*, and in *Cone* concurred in the result only.

**5.** The Supreme Court has granted certiorari in several cases raising *Escobedo* issues which, as in *Escobedo* itself, involve certain state court convictions: E. g., Vignera v. New York, 382 U.S. 925, 86 S. Ct. 320, 15 L.Ed.2d 339 (1965); Miranda v. Arizona, 382 U.S. 925, 86 S.Ct. 320, 15 L.Ed.2d 338 (1965); Johnson v. New Jersey, 382 U.S. 925, 86 S.Ct. 318, 15 L. Ed.2d 339 (1965).

**6.** The lower court credited Kreppein's version of the facts and appellant makes no convincing argument that Kreppein's story should be discredited.

**7.** When appellant was arrested he was seated on the front seat of his car with two women passengers, who might possibly have dropped the capsules at the time of arrest.

he owned but for an April 26 sale of heroin, and that the narcotics agents were well acquainted with many of the circumstances surrounding that sale. Some fifteen to twenty minutes later, appellant, while continuing to deny that he had delivered any narcotics to the federal undercover agent, Coursey, to whom the narcotics had been sold that day, admitted that he had negotiated with Coursey and that he had accepted the money for the heroin prior to its delivery to Coursey by another. Appellant was not informed at any point during this conversation that he had a right to consult with counsel.

After appellant had been fingerprinted and photographed at the offices of the Narcotics Bureau Kreppein took him to the United States Courthouse in Foley Square where the U. S. Commissioner had his office. Upon arrival at the courthouse, however, appellant was first taken to the office of Martin R. Gold, an Assistant United States Attorney. Gold asked appellant 67 questions which, with the answers that were given by appellant, were taken down and transcribed by a stenographer and were introduced into evidence by the Government at appellant's trial, as Government's Exhibit 22A.[8]

In addition to appellant, his interrogator, and the stenographer, Agent Kreppein and a second narcotics agent were present. Gold's interrogation began as follows:

Q. Your name is Haywood Williams? A. Yes.

Q. Mr. Williams, my name is Martin Gold, and I am an Assistant United States Attorney. Do you understand that? A. Yes.

Q. Now, I am going to ask you some questions and I want you to know that you do not have to answer any question. Do you understand that? A. Yes.

Q. You have been arrested for the violation of the Federal Narcotics Law. Do you understand? A. Yes.

Q. You are entitled to have an attorney. Do you understand that? A. Yes.

Q. Do you have an attorney? A. I plan to have one.

Q. But you don't have one now? A. No, I don't.

After these introductory questions and answers the interrogation continued apace and among the questions and answers was the following sequence:

Q. Do you sell heroin? A. No, I don't.

Q. On one occasion you sold it to a Federal Agent? A. Yes.

Q. When was that? A. Quite some time ago. In June, I think.

Q. In April of this year? A. Yes, probably was.

Q. How much? A. Several spoons. Don't know exactly what it was. It was quite some time ago.

Q. How much money did you get for it? A. I don't remember.

Q. Was it $215? A. I really can't remember what it was.

Q. Where did you give the agent the heroin? A. I think it was on Lenox Avenue, and 145th Street. I am not sure.

In all of the 67 questions there was but one, the 63rd, that bore any relationship to a continuing investigation of narcotics suppliers or purveyors. That question was "Where did you get the heroin from?" It was answered evasively.

After this interrogation appellant was taken, just before noon, before the U.S. Commissioner, pursuant to Rule 5(a) of the Federal Rules of Criminal Procedure, and the officer's complaint charging appellant with the April 26 sale to Agent Coursey was forthwith filed.

---

8. No issue was raised below and no claim was advanced to us that this interrogation was conducted during a detention of unreasonable length prior to arraignment. Therefore we have not dealt with the problem, despite United States v. Middleton, 344 F.2d 78 (2 Cir. 1965) decided subsequent to the *Williams* trial but prior to the filing of the appeal briefs.

## II.

We first consider whether appellant's inculpatory statements made between 3 A.M. and noon of November 5, 1963, first at the scene of arrest, then at the Narcotics Bureau later that morning, and finally at Assistant United States Attorney Gold's office, were properly admitted into evidence against appellant at appellant's trial over appellant's objections. We, considering ourselves bound by the above mentioned previous holdings of our court, hold here that all were properly admissible.

■ The contention that the trial court should have excluded appellant's damaging inculpatory scene-of-arrest admission that the cocaine discovered in his automobile belonged to him is easily answered. Appellant was not tried to a jury and the trial judge acquitted appellant of the charge of illegally possessing this cocaine, despite appellant's admission of ownership. This evidence therefore, under the circumstances, could not have been prejudicially relevant to the judge's determination of guilt on the other two counts.

■ The contention that the trial judge should have ruled that Government Exhibit 22A, a true copy of the transcript of appellant's conversation with Assistant United States Attorney Gold, was inadmissible is foreclosed to us by United States v. Drummond, supra. True, appellant made damaging admissions during the course of this conversation. But, before any of these admissions were elicited, Gold acquainted appellant with his right to remain silent and told him that he was entitled to have an attorney. Appellant indicated that he understood he had a right to have an attorney and that he planned to have one later. He made no request for counsel at the time. Under similar circumstances, a majority of our court has held that the Government was not required under the Sixth Amendment to refrain from continuing a non-coercive interrogation un-

til the one interrogated obtained his lawyer or a lawyer was produced by the Government. Our court's majority opinion in *Drummond* holds admissible the inculpatory admissions of an accused if he has received an initial notification of his rights, including the right to counsel, and thereafter does not request counsel but instead, without counsel, proceeds to answer questions put by government interrogators. United States v. Drummond, supra, 354 F.2d at 147. Compare United States v. Drummond, 158–159 (Waterman, J., dissenting).

We make no attempt in the present case to distinguish the fact-pattern here from the fact-pattern in *Drummond*, for we do not understand *Drummond* so as to permit us on this issue to reach a different result here from the result the majority reached there. We do point out, however, that whatever purposes may be assigned to justify the continuing interrogations of Drummond, the conversation with Williams at the Narcotics Bureau office and the interrogation of him by the Assistant United States Attorney were quite obviously not designed to elicit further information as may be thought necessary to pursue an investigation, to apprehend others, or to prevent other crimes.[9] The purpose was to elicit information from one in custody that would corroborate the proof the Government already possessed that if the arrested one were the actor on April 26 he was undoubtedly guilty of a particular single criminal act concerning which the Government had full information.

■ We now reach the contention that the trial judge should have excluded the inculpatory statements that appellant made after his arrest at the scene of his arrest and later made that same day at the Narcotics Bureau offices. Based upon the opinion for a majority of our court in United States v. Cone, supra, these statements would seem to be admissible against appellant at trial *a fortiori.* These conversations with Kreppein ap-

---

[9]. See United States v. Cone, 354 F.2d at 126, quoted and relied upon in United States v. Drummond, 354 F.2d at 147.

pear to have been so conducted by the agent that one receives the impression that appellant's inculpatory statements were "given voluntarily under circumstances which did not create any feeling that [appellant] was compelled to answer * * *." United States v. Cone, supra at 122. Nor is there any indication in this case that appellant was improperly induced to speak by promises of leniency.

Appellant's inculpatory statements made to Kreppein would be inadmissible against appellant if the Court in Escobedo v. State of Illinois, supra, is telling us that an arrested one must be told upon arrest that before he admits anything to the police he has a right to consult with counsel, and is telling us that no inculpatory statement elicited by the police, made prior to such consultation, is admissible unless the arrested one having been adequately informed of his right to consult with counsel clearly waives this right. In United States v. Cone, supra, 354 F.2d at 123, Chief Judge Lumbard, speaking for himself and four other members of our court, explicitly refused so to interpret *Escobedo*. See also United States v. Drummond, supra, 354 F.2d at 145–146. As long as *Cone, Robinson,* and *Drummond* remain the law in the Second Circuit, the post-arrest prearraignment inculpatory admissions of an accused will be admissible against him at his trial if they were given under such circumstances that a judge can satisfy himself that the accused when the statements were made felt he was not compelled to speak.

### III.

We next turn to appellant's claim that the district court erred in not granting the defense motion to strike all of Agent Kreppein's testimony on the ground that Kreppein failed to turn over to the defense certain informal notes he stated he had made of his conversation with Williams at the Narcotics Bureau on November 5, and which he did not incorporate into the more formal reports that the Government did turn over to defense counsel pursuant to 18 U.S.C. § 3500. Neither the trial court nor this court has had an opportunity to examine these notes; in such circumstances we cannot say that the notes were unrelated to the subject matter of Kreppein's testimony on his direct examination. Compare United States v. Sten, 342 F.2d 491, cert. denied, 382 U.S. 854, 86 S.Ct. 103, 15 L.Ed.2d 91 (1965). Nevertheless, we hold that the Government's failure to produce the notes does not require the sanction appellant sought or the reversal of appellant's conviction. It is by no means clear that any of the notes was a "statement" within the meaning of the statute, see United States v. Comulada, 340 F.2d 449, cert. denied, 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965); United States v. Jones, 360 F.2d 92 (2 Cir. March 17, 1966), and despite vigorous cross-examination of the agent, appellant has not persuaded us that they were wilfully destroyed or other than innocently misplaced. Under these circumstances, we hold that the court properly refused to strike Kreppein's testimony since we find the notes were not "lost" in bad faith. See United States v. Campbell, 303 F.2d 747, 751 (1 Cir. 1962), rev'd on other grounds, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). The language of the Jencks Act bolsters this position. Section 3500(a) speaks of statements "in the possession of the United States," and subsection (d) provides that its sanctions apply "[i]f the United States elects not to comply." See United States v. Greco, 298 F.2d 247, 251 (2 Cir.), cert. denied, 369 U.S. 820, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962).

The judgment of conviction is affirmed.