*[647]
 
 TANZER, J.
 

 Defendant was convicted by a jury of criminal activity in drugs, ORS 167.207, for a sale of heroin to an undercover police officer. He assigns as error on appeal the overruling of his objection to the state’s rebuttal evidence of a subsequent sale of narcotics by defendant and the denial of his motion to suppress the testimony of the undercover officer because of an asserted failure by the prosecution to comply with the discovery statutes, ORS 135.815.
 

 1.
 
 Evidence of other crimes
 

 The general rule is that evidence of other criminal or other socially disapproved acts by the defendant is admissible only if relevant to show identity, intent or something other than mere propensity to commit the crime with which he is charged, because the probative value of evidence of bad character is outweighed by the danger of prejudice.
 
 State v. Manrique,
 
 271 Or 201, 531 P2d 239 (1975);
 
 State v. Henley,
 
 27 Or App 607, 557 P2d 33 (1976). The protection against such evidence may be waived, however, and the defendant’s evidence determines the permissible scope of rebuttal. If, for example, the defendant takes the stand and testifies on direct examination that he has never sold heroin, the state may impeach his credibility with rebuttal evidence that he has sold heroin on occasions other than that for which he is charged.
 
 State v. Manrique,
 
 271 Or at 213.
 

 The question in this case is whether defendant’s statements on direct examination that he was not selling drugs was broad enough to open the subject for rebuttal testimony to impeach his credibility. Defendant’s direct examination includes the following:
 

 "Q. Have you ever seen Michael Kleinschmidt before?
 

 "A. On occasion.
 

 "Q. Where would you — where have you seen him?
 

 "A. In the streets. Like down on the Mall. And I didn’t associate with the guy. I really didn’t know him.
 

 
 *[648]
 
 "Q. Did you ever see him at the Sunrise address?
 

 "A. I seen him there, yes.
 

 "Q. Did you hear him refer earlier to an alleged incident where he stated that you threatened him?
 

 "A. Yes.
 

 "Q. Do you have any idea what he may have been referring to?
 

 "A. Yes, I do.
 

 "Q. What do you think he was referring to?
 

 "A. Well, in late August there was a fellow that Officer Egeter mentioned, a guy named James McCoy Smith, who had some dealings with the court at the courthouse. And he had saw the fellow Kleinschmidt down here, I guess, apparently for his case. And he told me that he had seen this guy Kleinschmidt at the courthouse and told me that he believed Kleinschmidt to be a snitch.
 

 "Kleinschmidt approached me during early September concerning buying drugs and at that time I told him I thought him to be a snitch and not come around me.
 

 "Q. So do you believe that is the incident he referred to concerning you threatening him was what you just related where you told him to leave you alone because you believed he was trying to get you in trouble?
 

 "A. Well, it was more than just that. I told him — I told him, basically, that I knew him to be a snitch and that if he would — he had a habit, it was just not me. You know, people were going to talk among each other and he was badgering a lot of different people and I have enough sense to understand, well, this guy isn’t badgering these people for nothing.
 

 "Q. Did you have any heroin to sell Officer Egeter or Mr. Kleinschmidt or anybody else?
 

 "A. No.
 

 "Q. Do you take heroin?
 

 "A. No, I do not.
 

 "Q. Do you have marks on your arms or anything like that?
 

 "A. No, I don’t.
 

 * if? * *
 

 "Q. * * * Mr. Jackson, did you see Officer Egeter testify before in the courtroom?
 

 
 *[649]
 
 "A. Did I see him testify?
 

 "Q. Yes.
 

 "A. Yes.
 

 "Q. Do you believe that you may have met Officer Egeter at sometime in the past?
 

 "A. I may have met him, but I didn’t know him as Officer Egeter.
 

 "Q. Would you have ever met him under the guise that he described of being Jake?
 

 "A. I had seen a guy and he was called Jacob, yes.
 

 "Q. Did you ever converse with Jacob?
 

 "A. Never.
 

 "Q. Were you friends with him?
 

 "A. No.
 

 "Q. Do you think you might have been at Sunrise, 1845 Sunrise when Jacob was over there? Do you think you might have been there a few minutes at the same time?
 

 "A. Maybe.
 

 "Q. During that period of time were you taking any drugs?
 

 "A. No, I was not.
 

 "Q. Were you selling any drugs?
 

 "A. No, I was not.
 

 "Q. Did you have any conversation with Jacob at all?
 

 "A. No.”
 

 The state showed in rebuttal that defendant sold heroin to Kleinschmidt on October 5, 1975, five days after the sale for which defendant was indicted.
 

 The state contends that the rebuttal was permissible because defendant’s direct testimony brought his drug dealing into issue. If not, it relies secondarily on defendant’s denial on cross-examination that he had ever sold any heroin. The state, however, may not open its own door.
 
 State v. Johnson,
 
 277 Or 45, 559 P2d 496 (1977). We therefore look solely to defendant’s direct testimony.
 

 Defendant went beyond a mere denial of the charged sale. The thrust of his direct testimony is that
 
 *[650]
 
 he would not have sold heroin to Officer Egeter on September 30, 1975, because "during that period of time” he was neither using nor selling drugs. While defendant’s direct testimony did not open his entire life to scrutiny, an event five days after the charged sale is close enough in time to reflect on defendant’s drug involvement "during that period of time.” The rebuttal testimony was therefore admissible.
 

 2.
 
 Alleged violation of discovery statutes.
 

 Defendant contends that the trial court erred in denying his motion to suppress the testimony of Officer Egeter because the prosecution failed to disclose the stenographer’s shorthand notes and the rough draft of his report of the transaction with defendant. Although the final report was disclosed to defendant, he contends that the unavailability of the notes and rough draft, which were destroyed as a matter of routine procedure after the final report was signed, violates the discovery requirements of ORS 135.815(1), which provides:
 

 "Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:
 

 "(1) The names and addresses of persons whom he intends to call as witnesses at any state [sic] of the trial, together with their relevant written or recorded state-, ments or memoranda of any oral statements of such persons.”
 

 The trial court made the following findings, which are supported by the record, with respect to the preparation of the report:
 

 "Officer Stephen Egeter’s reports were dictated orally to Sheryl Hackett. That Sheryl Hackett took verbatim shorthand notes of Officer Egeter’s oral reports. In some cases, rough draft reports were prepared verbatim by Sheryl Hackett. In those instances where rough drafts were made, changes to those rough drafts, if any, were made by Officer Egeter, and were not significant. In each case, a final report was prepared by Sheryl Hackett,
 
 *[651]
 
 verbatim, except for grammatical changes, from the shorthand notes or rough drafts. Sheryl Hackett acted in merely a secretarial capacity, neither paraphrasing Officer Egeter’s reports nor adding additional information herself* * *”
 

 Defendant contends that
 
 State v. Johnson,
 
 26 Or App 651, 554 P2d 624
 
 rev den
 
 (1976), requires suppression of the officer’s testimony. There an undercover agent prepared a handwritten report within 15 minutes after a narcotics sale on a form developed for that purpose. Another officer then prepared a typewritten report containing information from the original report as well as additional information. The undercover agent approved the final report approximately one week after the sale without reviewing his original report, which was then routinely destroyed. This court held that the destruction violated the state’s statutory duty of disclosure. Chief Judge Schwab, concurring, noted that the destroyed report was
 

 "* * * not fragmentary notes which became the basis of a written statement, nor stenographer’s notes, nor notes which have been transcribed, or things of that ilk, but, rather, a report of a crime adequate in itself to form the basis for initiating prosecution.” 26 Or App at 658.
 

 This case differs from
 
 Johnson
 
 because that case involved two distinct reports one of which was not disclosed while here there is only one report which went through three stages of preparation. There were no significant differences between the stenographer’s notes, the rough draft, and the final draft. The statutory purposes of providing witness statements are to minimize surprise, avoid unnecessary trials, provide adequate information for informed pleas, and to promote truthful testimony by allowing examination based on prior inconsistent statements.
 
 See,
 
 Commentary to Proposed Oregon Criminal Procedure Code at 186 (1972);
 
 State v. Bray,
 
 31 Or App 47, 569 P2d 688 (1977). Officer Egeter’s statement was disclosed to defendant, and no purpose would be served by requiring production of notes or rough drafts used in the
 
 *[652]
 
 preparation of the single statement. The trial court did not err in allowing Officer Egeter’s testimony.
 

 Affirmed.