Argued December 15, 1977, affirmed March 1, 1978

# STATE OF OREGON, *Respondent,*
## *v.*
# LARRY DEAN MORRISON, *Appellant.*
## (No. 17-491 A, CA 8710)

575 P2d 988

Deane Sterndale Bennett, Portland, argued the cause and filed the brief for appellant.

Kent B. Thurber, Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Joseph, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

■   Defendant appeals his jury conviction for criminal activity in drugs. ORS 167.207. His principal assignment of error requires an analysis of the meaning of the term pretrial "written statements" of a witness, which ORS 135.815(1) requires the prosecution to make available for discovery by a criminal defendant.[1]

Defendant and a companion furnished heroin to Robert Phillips, who had been hired jointly by the Hillsboro and Oregon State Police departments to make contacts with drug sellers, to purchase drugs and to cooperate with other officers in doing what was necessary to obtain convictions of the sellers, including testifying in court. The next day, Phillips made a writing concerning the transaction. During the suppression hearing Phillips testified that it was a complete summary of what had happened. He also testified that "My notes just basically told where I went to. Like I went to the Gypsy. Where I met people at, at the Friendly Village and what names I have." He said that the writing had contained abbreviations and in his opinion was not "decipherable" by anyone but himself.

About six weeks after the drug transaction, Phillips received a request from the district attorney for his "notes" concerning the drug purchase from defendant. In response, Phillips prepared a letter which contained an account of the transaction with defendant. Phillips testified that he used the original writing to prepare the letter, but the precise correlation between the two

---

[1]Defendant also complains about one instruction that was given and another that was not given. The requested instruction on the consideration to be given the testimony of a paid informant was properly denied because the matter was adequately covered by the court's instruction that in evaluating the witness' testimony the jury "consider what prompts them to testify as they do and the interest that they may have in the outcome of this case." The court's instruction that the county in which the offense occurred "is not a material element of the crime" was, as the state now concedes, erroneous; however, under ORS 17.510 and 136.330(2) we do not consider this assignment because no exception was taken to this erroneous instruction.

documents is not clear. At the suppression hearing he testified that he "improved upon" the original by writing words out fully, but that the contents were otherwise unchanged from the original. At trial, however, he admitted that he had added some "detail" when preparing the letter. After preparing the letter, Phillips lost or destroyed his original writing.

Defendant sought discovery of pretrial statements of all prosecution witnesses. Phillips' letter to the district attorney was made available. Phillips' original writing, having been lost or destroyed, obviously was not made available. Before trial defendant moved to suppress Phillips' testimony on the ground of violation of the discovery statutes. At trial defendant moved to strike Phillips' testimony on the same ground. Denial of these motions is assigned as error.

ORS 135.815(1) provides:

> "Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

> "(1) The names and addresses of persons whom he intends to call as witnesses at any state [sic] of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

We have previously interpreted "written statements" as including things intended by their makers as an account of an event or a declaration of fact, but not including notes or rough drafts which are merely steps in the preparation of a statement. *State v. Jackson,* 31 Or App 645, 571 P2d 523 (1977), *rev den* (1978); *State v. Bray,* 31 Or App 47, 569 P2d 688 (1977). Under this standard, Phillips' original writing was not a statement within the meaning of ORS 135.815(1), but was more akin to notes or a rough draft—the ultimate proof that Phillips did not intend it to be an account of an event or a declaration of fact being that he never submitted it to his supervisors as such, but instead redrafted it.

Indeed, the facts of this case are so similar to the facts of *State v. Jackson, supra,* that it would be possible to affirm with just a citation to our prior decision. But in view of the dissent in this case, we will reexamine the legislative intent expressed in ORS 135.815(1).

ORS 135.815(1) was derived from ABA Standards Relating to Discovery and Procedure Before Trial, § 2.1 (Approved Draft 1970). Commentary to Proposed Oregon Criminal Procedure Code 186 (1972). The commentary of the ABA draftsmen cites *Jencks v. United States,* 353 US 657, 77 S Ct 1007, 1 L Ed 2d 1103 (1957), and the subsequent legislative adoption of the basic rule of that case, Crimes and Criminal Procedure Act, 18 USC § 3500, which requires disclosure of a witness's prior statements after he has testified at trial. The ABA commentary states:

> "* * * [D]efense counsel must be permitted to prepare adequately to cross-examine the witnesses against the accused * * *.
> "* * * * *
> "* * * [F]airness requires that the statements be disclosed during trial in any event * * * [and] if the disclosures are made prior to trial, the delays and attendant inconveniences occasioned by disclosures during trial will be avoided * * *." ABA Standards at 56-58.

We interpret the ABA Standard as thus explained to be basically an adoption of the philosophy of the Jencks Act, with the modification that disclosure of statements should occur pretrial.

We have previously suggested that "statements" within the meaning of ORS 135.815(1) and the ABA Standard from which it was derived may have been intended to have a broader meaning than the same term used in the federal Jencks Act. *State v. Bray, supra,* 31 Or App at 50. However, for present purposes —whether written notes and drafts are statements—

[ 13 ]

we see no significant difference between the federal approach,

> "The term 'statement' * * * in relation to any witness called by the United States means—(1) a written statement made by said witness and signed or *otherwise adopted or approved by him* * * *." 18 USC § 3500(e)(1) (Emphasis supplied),

and our own prior approach,

> "* * * [W]e construe the statute [ORS 135.815(1)] to require production of any 'statement' which is intended by its maker as an account of an event or a declaration of fact. * * *" *State v. Bray, supra,* 31 Or App at 51.

Under the Jencks Act, the federal courts have rather consistently held that notes and rough drafts subsequently transcribed and incorporated into a final report are not statements, as distinguished from the final report which is a statement. *United States v. Carrasco,* 537 F2d 372 (9th Cir 1976); *United States v. Jiminez,* 484 F2d 91 (5th Cir 1973); *United States v. Terrell,* 474 F2d 872 (2d Cir 1973); *United States v. Spatuzza,* 331 F2d 214 (7th Cir), *cert denied* 379 US 829 (1964). Different federal courts state the rule differently, with a variety of minor qualifications:

> "* * * This court has several times held in varying contexts that the Jencks Act, 18 U.S.C. § 3500, imposes no duty on the part of law enforcement officers to retain rough notes when their contents are incorporated into official records and they destroy the notes in good faith. *E.g., United States v. Covello,* 410 F.2d 536, 545 (2d Cir. 1968), cert. denied, 396 U.S. 879, 90 S.Ct.150, 24 L.Ed. 2d 136 (1969) (good faith destruction does not require new trial); *United States v. Jones,* 360 F.2d 92, 95 (2d Cir. 1966), cert. denied, 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967) (good faith destruction does not require striking agent's testimony). Here there was no suggestion or showing as in *United States v. Lonardo,* 350 F.2d 523 (6th Cir. 1965), that the notes were deliberately destroyed on the eve of trial and were substantially different in content from the formal report. * * *

"While, of course, it is difficult to prove such a difference absent the original notes, it is not impossible. Other evidence such as a stenographer's recollections can be adduced. *E.g., United States v. Lonardo,* 350 F.2d 523 (6th Cir. 1965). The courts have, in effect, given law enforcement agents a little leeway to destroy immaterial matter." *United States v. Terrell, supra,* 474 F2d at 877.

"Defendants complain that enforcement of [18 USC § 3500] was thwarted when the FBI agents destroyed notes taken during interviews with witnesses. The agents testified, however, that the reports furnished defendants accurately reflected these notes and all the information contained in the notes was included in the reports.

"* * * Moreover, in our opinion [18 USC § 3500] does not require government agents to preserve their notes after they have been transcribed and the reports checked for accuracy * * *." *United States v. Spatuzza, supra,* 331 F2d at 218.

"The case is not comparable to *United States v. Lane,* 6 Cir., 1973, 479 F.2d 1134, 1135-36, *cert. denied,* 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112, or *United States v. Terrell,* 2 Cir., 1973, 474 U.S. 872, 877, both of which are cited to us by the government. In those cases agents had destroyed their own rough notes after incorporating the substance of them into final reports. It may be that the * * * witness * * * who adapts a final report from preliminary memoranda will tailor his observations to fit his conclusion, but the danger is not nearly so great as when he revises the notes or the full statement of another. *Cf. Palermo v. United States, supra,* 360 U.S. at 352-53, 79 S.Ct. 1217. The benefits to defendants in those few cases in which revision produces substantial distortion may not justify the costs of retaining all rough notes in all cases. *See United States v. Comulada,* 2 Cir., 1965, 340 F.2d 449, 451, *cert. denied,* 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272. Moreover, preliminary notes of an agent from which he later prepares a report are not statements as that term is defined in the Jencks Act. *See State v. Maluia,* Hawaii, 1975, 539 P.2d 1200, 1208-11, and authorities cited therein. * * *" *United States v. Carrasco, supra,* 537 F2d at 377.

■■ The rationale for the distinction between notes which are not "statements" and a final report which is

[ 15 ]

a "statement" lies in the purpose for making pretrial statements available for pretrial discovery so that they will be available upon cross-examination for possible impeachment by prior inconsistent statement. Unlike other things subject to discovery under ORS 135.815, such as photographs and tangible objects, pretrial statements cannot generally be used as substantive evidence, but only for impeachment. *See State v. Derryberry,* 270 Or 482, 528 P2d 1034 (1974). To be a statement that can be used for impeachment, there must have been some intent to communicate information to another. *Cf. United States v. Carrasco, supra,* 537 F2d at 375:

> "* * * Whatever the diary was before Gamez gave it to Gonzales, it became a statement, as that word is commonly used, once she gave it to him. A statement, unlike notes or a diary, seeks to transmit information from the declarant to the reader. By giving her diary to Gonzales, Gamez transformed what had been a diary not covered by the Jencks Act into a statement which was. * * *"

Generally notes and rough drafts are not such statements. Specifically, in this case, Phillips' original writing was never communicated to another. The meaning of "statements" should be limited to matter which can, in fact, be used for impeachment.

Some may complain that the more contemporaneous writing should always be preserved and produced because it is likely the most accurate, and that in the process of incorporating preliminary notes into a final report a law enforcement officer may consciously or unconsciously slant the narrative against the defendant by way of selective reporting or editorialization. If problems these be, the solution is not in distortion of the meaning of "statements" as used in the discovery statute, but in the completely separate constitutional doctrine of *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Our discovery statutes

[ 16 ]

are expressly not designed to codify or implement *Brady:*

"\* \* \* The Article does not purport to include *all* information which the district attorney may be required, as a matter of due process, to disclose prior to the submission of the case to the jury. For instance, section 322 [ORS 135.815] does not include all information which must be disclosed under *Brady v. Maryland,* 373 US 83 (1963), because the information is exculpatory or may tend to mitigate punishment \* \* \*.

"\* \* \* \* \*

"Unlike the ABA draft, however, this section [ORS 135.815] does not require disclosure of \* \* \* information tending to negate guilt of the accused or tending to reduce punishment therefor, except to the extent that such information is of the type specifically subject to disclosure. Other exculpatory or mitigating information would remain subject to disclosure under *Brady v. Maryland,* supra, and *Hanson v. Cupp* [5 Or App 312, 484 P2d 847 (1971)]." Commentary to Proposed Oregon Criminal Procedure Code 186 (1972).

In short, matters which are "statements" within the meaning of the discovery statute may present both a statutory issue (if destroyed or otherwise not disclosed) and a constitutional issue (if exculpatory). Matters which are not "statements" within the meaning of the discovery statute, such as rough notes and preliminary drafts, can present only a constitutional issue.

Defendant makes no constitutional claim in this case. His statutory claim that Phillips' original writing was a statement within the meaning of ORS 135.815(1) is incorrect for the reasons stated.

Affirmed.

**JOSEPH, J.,** dissenting.

Previous cases in this court have nibbled away at the statutory discovery rights created by ORS 135.805 to 135.873, and in particular ORS 135.815(1), by the somewhat doubtful process of distinguishing "notes" or "rough drafts" from "statements" and calling the

[ 17 ]

former merely "steps in the preparation of a statement." *See State v. Bray,* 31 Or App 47, 569 P2d 688 (1977), and *State v. Jackson,* 31 Or App 645, 571 P2d 523 (1977), *rev den,* 281 Or 323 (1978). Today the majority has taken a great big bite, which I find bitter tasting and indigestible. In doing so it has consumed its own progeny, namely this language in *Bray:*

"* * * [W]e construe the statute to require production of any 'statement' which is intended by its maker as an account of an event or a declaration of fact." 31 Or App at 51.

Furthermore, the majority goes far beyond "the little leeway" given by interpretation of the federal Jencks Act (18 USC § 3500) by cases such as *United States v. Terrell,* 474 F2d 872 (2d Cir 1973), which it quotes and relies upon. Those cases require a showing of good faith, depend upon there being a reliable method of reconstruction of the original and, usually, recite other protective factors utterly missing here. I hope there is still a difference between a little leeway and an open invitation to chicanery after today's decision. *Sed quaere!*

The original writing was a complete statement, not merely "fragmentary notes." The question of whether the writing was "decipherable" by anyone else should not have been decided unilaterally by Phillips. Although the letter purportedly bears a close similarity to the original writing, in no fair sense could the original writing be considered a "stage in the preparation" of the letter.

The relationship between the undercover agent and the police was clear. By the very nature of his employment in making drug cases, he knew that he would be called upon to testify concerning his activities. He prepared the original writing in question for the purpose of aiding him in doing that. For the purpose of determining the state's discovery obligations there is no distinction between Phillips and the police officers who participated in the case. Given that,

[ 18 ]

the rule in *State v. Johnson,* 26 Or App 651, 554 P2d 624, *rev den* (1976), required the state to produce the original writing.

The majority says that that original "was more akin to notes or a rough draft" and that "the ultimate proof" of that characterization is "that he never submitted it to his supervisors as such, but instead redrafted it." I read the record quite differently. Phillips felt that it was to his advantage to get out of town—fast—after making the case for the police. He then prepared his report as a full and accurate statement of what he and others had done. Had he been timely asked for it, he probably would have turned it over.

What undoubtedly bothers the majority—and it certainly bothers me—is that the only remedy for failure to produce the original written statement in this instance would be the suppression of the testimony of a key witness. *See State v. King,* 30 Or App 223, 228, 566 P2d 1204 (1977), *rev den,* 281 Or 323 (1978). However, that is the only meaningful remedy.[1] Unless we are willing to undermine significantly the criminal discovery statutes and the right to effective cross-examination which they are designed, in part, to protect, *State v. Bray, supra,* 31 Or App at 51, we should have no choice but to reverse defendant's conviction and order a new trial.

I believe this is an appropriate case to indicate to law enforcement personnel and to prosecutors that the primary guiding rule should be that everthing that can be preserved reasonably should be preserved. I

---

[1] The six-week delay on the part of the prosecution in securing the writing from Phillips is unexplained. The duty to furnish discovery implies a correlative duty to collect and protect evidence the prosecution reasonably ought to know will be part of its case. The document was part and parcel of the performance for which the state contracted with Phillips, and it is not unreasonable to impose a severe penalty for failing to take adequate steps to preserve it.

fear that the teaching of the majority may lead to the opposite rule of conduct.

Therefore, I respectfully dissent.