Submitted November 15, 1976, affirmed February 8, reconsideration
denied March 23, petition for review denied May 23, 1977

# STATE OF OREGON, *Respondent,*
## *v.*
# FRANK J. THOMPSON, *Appellant.*
## (No. 22264, CA 6063)

559 P2d 1294

William W. Kinsey and Tooze Kerr Peterson Marshall & Shenker, Portland, filed the brief for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Kevin L. Mannix, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

LEE, J.

**LEE, J.**

■ Defendant appeals from his conviction of the crime of "assault in the third degree," ORS 163.165,[1] assigning as error (1) the admission into evidence of four exhibits—photographs of the assault victim—offered by the state,[2] (2) the refusal of the court to permit him to call a witness for the purpose of impeaching a witness previously called by the state, and (3) the giving of an allegedly "ambiguous and misleading" jury instruction.

■ Concerning the photographs introduced by the state for the purpose of showing the nature of the injury suffered by the assault victim, defendant contends that they should have been suppressed because they had not been "disclosed" to him as required by the criminal discovery statutes—ORS 135.805 through 135.873.[3] Prior to defendant's trial, however, he was

---

[1]
"(1) A person commits the crime of assault in the third degree if he:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the third degree is a Class A misdemeanor." ORS 163.165.

[2] In an additional assignment of error defendant contends that the court erred in denying his motion for a judgment notwithstanding the verdict and alternatively for a new trial, which motion was itself based upon the alleged improper admission of the four photographic exhibits. The court below was, however, without authority to grant a motion for a judgment notwithstanding the verdict; the Supreme Court has recently held that the *only* postverdict motions available to defendants in Oregon are motions for new trials and motions in arrest of judgment, a motion in arrest of judgment being available for the limited purpose of challenging the jurisdiction of the grand jury or alleging that the facts in an indictment do not state an offense. *State ex rel Haas v. Schwabe,* 276 Or 853, 556 P2d 1366 (1976). Under the circumstances the additional assignment of error based upon the denial of defendant's motion for a new trial is superfluous.

[3] ORS 135.815 provides in relevant part that

"* * * the district attorney shall disclose to the defendant the following material * * * within his possession or control:

"* * * * *

informed of the existence of the photos by the district attorney's office and told that he would be permitted to inspect them at his convenience. In response to a "motion for discovery" filed by defendant, the circuit court subsequently held that the state was obligated to provide defendant with reprints of the photographs in question and accordingly ordered the state to furnish those reprints "on or before March 16, 1976," which was one week before the scheduled commencement of defendant's trial. The reprints were apparently made available on March 16; defendant, who had made no inquiry whatsoever as to whether he might obtain the photographs between the time of the issuance of the order and March 16, was advised of their availability in a letter dated March 16, and postmarked March 17. In effect, the photographs were furnished to defendant prior to his trial as ordered; there was, therefore, no violation of the duty to disclose imposed by the discovery statutes, and the admission of the exhibits was not improper.[4]

3. Neither did the court err when it refused to permit defendant to call a witness for the purpose of impeaching a witness appearing on behalf of the state; based on defendant's own representations to the court as to

---

"(4) Any books, papers, documents, photographs or tangible objects:

"(a) Which the district attorney intends to offer in evidence at the trial

"* * * * *"

As used in ORS 135.815 "disclose" means "to afford the adverse party an opportunity to inspect or copy the material." ORS 135.805(2).

Where the district attorney has failed to comply with the requirements of ORS 135.815 the trial court may "order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate." ORS 135.865.

[4] Defendant's contention that he was denied "due process" by the state's "suppression" of the exhibits is without merit. *See Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963); *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976).

[ 412 ]

the specific purpose for which his witness was to appear, the testimony sought to be introduced would, if believed by the jury, have served only to impeach the state's witness on a "collateral matter," i.e., an issue not relevant to the assault charged.[5] Under these circumstances the court did not abuse its discretion in refusing to permit the witness to appear. *Flande v. Brazel,* 236 Or 156, 386 P2d 920 (1963); *State v. Gardner,* 16 Or App 464, 518 P2d 1341, Sup Ct *review denied, cert denied* 419 US 998 (1974).

■■ Finally, defendant concedes that he did not take an exception in the circuit court to the instruction he now challenges as "ambiguous and misleading." In the absence of such an exception in the trial court, an assignment of error based upon an allegedly erroneous instruction will not be considered by this court unless upon an examination of the entire record we find that the alleged error is manifest and that the ends of justice will not otherwise be satisfied. ORS 17.510; *State v. Marsh,* 260 Or 416, 490 P2d 491 (1971), *cert denied* 406 US 974 (1972); *State v. Kniss,* 253 Or 450, 455 P2d 177 (1969); *State v. Avent,* 209 Or 181, 302 P2d 549 (1956); *State v. Johnson/Mitchell,* 17 Or App 242,

[5]Defendant was specifically charged with intentionally causing physical injury to Captain Bruce Oester of the Columbia County Sheriff's Office by striking him with his hand on August 4, 1975, the assault allegedly occurring while Captain Oester was attempting to arrest defendant's son, Ronald Thompson, under authority of an outstanding arrest warrant. Defendant, who conducted his own defense at trial, testified that he had brought his son Ronald to the Columbia County Courthouse on August 4 in accordance with the instructions of Columbia County Sheriff Richard Tennant who, in the course of a meeting with defendant on July 29, 1975, had agreed that Ronald would not be arrested on the outstanding warrant, and that he may have accidentally struck Captain Oester when he attempted to arrest Ronald in violation of the agreement made by the sheriff. On rebuttal Sheriff Tennant testified that he had never told defendant that his son would not be arrested; on cross-examination Tennant reiterated that while he had, in fact, met with defendant on July 29, no "arrangement" with respect to the outstanding warrant had been made. Asked whether another son of defendant, Jim Thompson, had been present at the meeting of July 29, Sheriff Tennant indicated that defendant had been alone. Defendant then indicated to the court that he wished to call Jim Thompson to the stand; that Jim Thompson would impeach Sheriff Tennant's testimony by testifying that he had, in fact,

521 P2d 355, Sup Ct *review denied* (1974); *State v. Charles,* 3 Or App 172, 469 P2d 792 (1970), Sup Ct *review denied, cert denied* 406 US 973 (1972). Suffice it to say that this is not such a case.

Affirmed.

---

been present at a meeting between his father and the sheriff on July 29 at which the sheriff had agreed to refrain from arresting Ronald. Neither the presence or absence of Jim Thompson at the meeting between defendant and the sheriff nor the existence or nonexistence of an agreement between them as to whether Ronald Thompson would be arrested on the outstanding warrant was of any relevance, however, to the issues involved in this case, i.e., whether defendant unlawfully and intentionally struck Captain Oester on August 4, 1975.