Argued May 23, affirmed July 25, 1977

STATE OF OREGON, *Respondent,*
*v.*
WAYMAN RAY KING, *Appellant.*
(No. C 76-04-05771, CA 6964)
566 P2d 1204

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Since becoming effective January 1, 1974, Oregon's criminal discovery statutes, ORS 135.805-135.873, have been interpreted in numerous appellate decisions.[1] This case offers the opportunity to collect and synthesize those prior decisions.

In the course of defendant's trial for burglary, it developed that the state had failed to disclose to the defense the names of two witnesses—one of the residents of the burglarized premises and the crime laboratory technician who compared defendant's fingerprints with those found in the burglarized premises. The trial court expressed its displeasure[2] but nevertheless permitted the witnesses to testify over defendant's objection. On appeal defendant contends the trial court erred in not granting any remedy for the (apparently now-admitted) state's violation of the discovery statutes.

The appellate decisions indicate there have been relatively few problems with the questions of what is subject to discovery and the mechanics of discovery, the statutes on these subjects being largely self-explanatory. A recurring problem, however, has been the question of what remedy to impose for breach of a

---

[1] *State v. Hockings,* 29 Or App 139, 562 P2d 587 (1977); *State v. Addicks,* 28 Or App 663, 560 P2d 1095 (1977); *State v. Thompson,* 28 Or App 409, 559 P2d 1294, Sup Ct *review denied* (1977); *State v. Johnson,* 26 Or App 651, 554 P2d 624, Sup Ct *review denied* (1976); *State v. Castro,* 25 Or App 873, 551 P2d 488, Sup Ct *review denied* (1976); *State v. Chase,* 23 Or App 663, 543 P2d 1104 (1975), Sup Ct *review denied* (1976); *State v. McNamara,* 23 Or App 475, 543 P2d 14 (1975), *rev'd on other grounds* 274 Or 565, 547 P2d 598 (1976); *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976); *State v. Gill,* 22 Or App 484, 539 P2d 1138, Sup Ct *review denied* (1975); *State v. Koennecke,* 22 Or App 89, 537 P2d 1160 (1975), *rev'd* 274 Or 169, 545 P2d 127 (1976); *State v. Wolfe,* 21 Or App 717, 536 P2d 555, *aff'd* 273 Or 518, 542 P2d 482 (1975); *State v. Curtis,* 20 Or App 35, 530 P2d 520, Sup Ct *review denied* (1975); *State v. Hand,* 19 Or App 514, 528 P2d 126 (1974), Sup Ct *review denied* (1975). See generally Osburn, *Pretrial Discovery Under the Oregon Criminal Procedure Code,* 10 Will L J 145 (1974).

[2] The trial court commented: "This case is so shoddily prepared it is unbelievable."

duty to disclose imposed by the discovery statutes. ORS 135.865 provides:

> "Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

The legislative history indicates this statute was derived from the American Bar Association Standards Relating to Discovery and Procedure Before Trial, § 4.7 (1970).[3] One part of the commentary to the ABA Standard states:

> "Rather than attempt to provide specific sanctions for specific violations, the Committee deemed it wise to leave the sanctions by and large to the discretion of trial courts *under appellate court supervision.*" (Emphasis supplied.) ABA Commentary, § 4.7, p 107.

In interpreting and applying ORS 135.865, our cases have, at least partially, recognized the role of appellate court supervision. In *State v. Addicks,* 28 Or App 663, 560 P2d 1095 (1977), an objection was made at trial to the introduction of exhibits on the ground that they had not been disclosed pretrial. Without inquiry or comment, the trial court overruled the objection. We reversed and remanded on the ground that neither the trial court's initial exercise of discretion nor our review thereof could be exercised in a factual vacuum. 28 Or App at 669. Thus, *Addicks* requires that when a claim of a violation of the criminal discovery statutes arises during trial, the court must make a record—or permit the parties to make a record—of whether, in fact, the discovery statutes were complied with or not, the explanation for noncompliance, and the impact of noncompliance on the aggrieved party.

If the *Addicks* procedure establishes a violation of

---

[3] Commentary to Proposed Oregon Criminal Procedure Code 190 (1972).

the discovery statutes, the question remains of fashioning an appropriate remedy. Our prior cases interpreting and applying ORS 136.865 may not have sufficiently considered the role of appellate supervision at this level. In some cases involving breach of the discovery statutes, we have affirmed suppression and exclusion of nondisclosed evidence. *State v. Johnson,* 26 Or App 651, 554 P2d 624, Sup Ct *review denied* (1976); *State v. McNamara,* 23 Or App 475, 543 P2d 14 (1975), *rev'd on other grounds* 274 Or 565, 547 P2d 598 (1976); *State v. Wolfe,* 21 Or App 717, 536 P2d 555, *aff'd* 273 Or 518, 542 P2d 482 (1975). In other cases involving similar breaches of the discovery statutes, we have affirmed trial courts' failure to impose any sanction. *State v. Castro,* 25 Or App 873, 551 P2d 488, Sup Ct *review denied* (1976); *State v. Curtis,* 20 Or App 35, 530 P2d 520, Sup Ct *review denied* (1975). In all of these cases, ostensibly the same statute, ORS 135.865, was being applied. It is the proper role of appellate courts to at least minimize inconsistent results in the application of a single statute by different trial courts.

The ultimate rule being statutory, we return to the legislative history noted above. The commentary to the ABA Standard, from which ORS 135.865 was derived, states:

"* * * [R]ights and duties are ephemeral indeed without remedies. Thus, by this standard, the Committee intends to emphasize that discovery rules must be enforced.

"* * * It was thought useful to suggest that explicit orders to disclose may be effective where persons affected fail to understand the more general provisions of a rule or statute. If the duty breached is clear, however, it would usually be inefficient as well as superfluous to issue further orders. Continuances should also be utilized where necessary if a party is surprised because of his adversary's failure to disclose. Beyond these two specific suggestions, the Committee is of the view that other specific suggestions would tend to limit the ingenuity of trial courts with respect to matters peculiarly suited to their judgment and administration.

[ 227 ]

"Section 4.7 was adapted from FED. R. CRIM. P. 16(g) (1966). The commentary applicable to the pertinent part of that rule is especially cogent:

" '[The rule] gives wide discretion to the court in dealing with the failure of either party to comply with a discovery order. Such discretion will permit the court to consider the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.'

39 F.R.D. at 178 (1966). * * * The Committee's general view, moreover, was that the court should seek to apply sanctions which affect the evidence at trial and the merits of the case as little as possible, since these standards are designed to implement, not to impede, fair and speedy determinations of cases." ABA Standards, Commentary at 107-08.

The commentary to the Oregon statute adds:

"* * * Should the court find that nondisclosure is wilful, the court could consider that the withholding of evidence is contumacious, and the offending party might be punished for contempt." Commentary to Proposed Oregon Criminal Procedure Code 190, § 327 (1972).

This legislative history indicates that the various draftsmen intended: (1) trial courts would have discretion and could use ingenuity to fashion remedies for violation of the discovery statutes, subject to appellate court supervision; (2) that the extent of prejudice caused by nondisclosure would be relevant to the formulation of a remedy; (3) generally, an order to disclose and a reasonable continuance would be the most appropriate remedy in the majority of situations; and (4) that the sanction of ruling nondisclosed evidence excluded from the trial should be used only in the most extreme situations.

■ This legislative history furnishes substantial guidelines for the application of ORS 135.865. We add, for the sake of emphasis, a statement of our understanding of the concept of prejudice in this context. Every time there is a failure to disclose evidence

subject to pretrial discovery, there will be some surprise—and thus arguably some prejudice—at trial. However, the general purpose of the Oregon criminal discovery statutes is to "minimize surprise." Commentary, Proposed Oregon Criminal Code 186, § 322 (1972). The operative word is "minimize," not "eliminate." Thus, the prejudice inquiry must first focus on the extent of surprise.

The record in the present case illustrates our point. Defense counsel had access to police reports that stated the names of the residents of the burglarized premises. However, for some reason, the prosecution failed to serve formal notice that it intended to call one of the residents as a witness. Genuine surprise, if any, resulting from this omission had to be minimal; it takes little imagination for defense counsel to anticipate that the residents of burglarized premises will be called as witnesses in a burglary trial. The record does not disclose a claim of actual surprise.

The second aspect of the prejudice inquiry is: What would the party to whom disclosure should have been made reasonably have done differently to prepare for trial had disclosure occurred? The record in this case also illustrates this point. In this court, defendant argues he was prejudiced by the nondisclosure of the state's intent to call the fingerprint-analysis witness, Mr. Lauer:

> "The prejudice to defendant, in allowing * * * Mr. Lauer to testify, is readily apparent. The state's case stood or fell on the evidence of fingerprints found at the scene, later identified to be defendant's. Without the fingerprints, the state had insufficient evidence to connect defendant with the crime. * * * Mr. Lauer's testimony was necessary to identify the fingerprints as belonging to defendant. More crucial witnesses cannot be imagined."

True, Mr. Lauer's testimony was "prejudicial" to defendant *at the time of trial.* But that is not the appropriate inquiry for purposes of administering *pretrial* discovery statutes. Rather, the inquiry must

be: What would defendant have done differently to prepare for trial had the prosecution, before trial, disclosed its intent to call Mr. Lauer as a witness? The record contains no answer to that question.[4] Defendant knew the police had found his fingerprint at the scene of the burglary. Defendant has thus failed to claim or show any prejudice as that term is defined for present purposes—that is he was not misled into a course of action or inaction which would not otherwise have happened.

We hold that a party aggrieved by a violation of the criminal discovery statutes who establishes substantial prejudice to the preparation of his case for trial is entitled to some remedy for the other party's breach of statutory duty. We hold that the selection of a sanction to be imposed upon the offending party is limited by the guidelines noted above. And conversely, we hold that no sanction for violation of the discovery statutes is warranted when the violation causes no prejudice in the preparation of the case for trial. This present case comes within the latter holding. We are here referring only to sanctions specifically enumerated in the discovery statutes. We do not restrict the use of the trial court's contempt power or any other inherent power in the case of willful, repeated or reckless failure to comply with the discovery statutes even absent any actual prejudice to a litigant.

Any suggestions in our prior decisions that ORS 135.865 vests virtually unlimited and unreviewable discretion in the trial courts are disapproved.

The final question is whether the interpretation we here adopt of ORS 135.865—an interpretation we find compelled by the legislative history—is foreclosed by the Supreme Court's decision in *State v. Wolfe,* 273 Or

_____
[4]Nor does the record suggest anything defense counsel would have done differently to prepare for trial had he been formally told the state intended to call the other witness here in question, the resident of the burglarized premises.

518, 524-25, 542 P2d 482 (1975), in which the court stated:

> "The presence or absence of prejudice is a most important factor to be considered by the trial court in exercising the discretion conferred upon it by ORS 135.865 in the choice of sanctions, particularly in imposing the extreme sanction of refusing to receive in evidence the material not disclosed. The terms of the statute, however, do not appear to make the presence or absence of prejudice a necessary factor in the exercise of the discretion conferred by the statute in the choice of any of the sanctions to be imposed by its terms."

We are frankly uncertain of the intended meaning of this passage. The first sentence tells us prejudice is "a most important factor" in the application of ORS 135.865. The second sentence seems to say that prejudice is not "a necessary factor" in the application of ORS 135.865. In footnote 3 of its *Wolfe* opinion, the Supreme Court cited the legislative history we have quoted extensively above. We therefore infer the court was aware of the draftsmen's intent that: (1) the extent of prejudice was relevant to the selection of sanctions for breach of discovery duties; and (2) the imposition of sanction was to be subject to appellate supervision. Aware of this history, we cannot believe the Supreme Court intended to hold that the trial courts' discretion was so broad as to allow imposition of no sanction for a highly prejudicial violation of the discovery statutes or so broad as to allow imposition of an extreme sanction for a technical, nonprejudicial violation of the discovery statutes. We therefore conclude that our present analysis of ORS 135.865 is consistent with *Wolfe.*

Affirmed.