Argued and submitted April 29, reversed and
remanded for trial May 26, 1981

# STATE OF OREGON,
*Appellant,*

*v.*

# ONNIE WILLIAM SARRATT,
*Respondent.*

## (No. 80-0340-C, CA 19774)

628 P2d 752

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Mark Schiveley, Medford, argued the cause for respondent. With him on the brief was Boyer & Putney, Medford.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

In this criminal action under the traffic code, the state appeals from orders of the district court dismissing an accusatory instrument and suppressing evidence. *See* ORS 138.060(1) and (3); *see also* ORS 481.170(2). We reverse.

We draw our statement of the facts substantially from the state's brief. The defendant was originally charged by a Uniform Traffic Citation with the crime of driving under the influence of intoxicants, a violation of ORS 487.540, as enhanced by ORS 484.365.[1] The material allegations of the citation were as follows:

"* * * * *

"That on the 21st day of January, 1980, at 1:32 am, Sarratt Onnie William, * * * Central Point Oregon, * * * Lic. No. 471737, did unlawfully operate vehicle Lic. No. GLD 824, State of Oregon, Year '77 * * * on a public highway * * * located in the city and state aforesaid, and did then and there commit the following * * * traffic crime:

---

[1] ORS 487.540 provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .10 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath, blood, urine or saliva of the person made under ORS 487.805 to 487.815 and 487.825 to 487.835; or

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance.

"(2) Driving while under the influence of intoxicants is a Class A traffic infraction."

ORS 484.365 provides in pertinent part:

"(1) Any Class A traffic infraction, as defined in subsection (3) of this section, shall be prosecuted and be punishable as a Class A misdemeanor if the defendant has been convicted of a Class A traffic infraction, as defined in subsection (3) of this section, or traffic crime within a five-year period immediately preceding the commission of the offense, and the previous conviction was not part of the same transaction as the present offense.

"* * * * *

"(3) As used in this section, 'Class A traffic infraction' means:

"(a) Driving while under the influence of intoxicants.

"* * * * *"

"* * * * *

"Other violation — DUII."

On December 3, 1980, the case came before the district court for trial. Prior to trial defendant orally moved to suppress the results of a chemical test made of defendant's breath on the ground that the state had failed to furnish upon defendant's request a certified copy of any report of said test as required by ORS 487.830(2), *post.* Introduced into evidence as a single package were: (1) a letter to defense counsel dated January 30, 1980, from the records supervisor of the Eagle Point Police Department, containing an uncertified copy of an intoxilyzer printout and an uncertified copy of an intoxilyzer operator's checklist; (2) a letter dated May 20, 1980, from the records supervisor of the Eagle Point Police Department, informing defense counsel that a certified copy of the intoxilyzer records would be available to him for $3.00 paid in advance; and (3) a letter dated January 29, 1980, from defense counsel to the Eagle Point Police Department, requesting under ORS 487.830 "* * * a certified copy of any report concerning any chemical analysis done by your agency of the blood alcohol level * * * of defendant in the instant case." Defendant was never provided with a *certified* copy of any record relating to the intoxilyer.

Counsel for the state advised the court that an employe of the district attorney's office made a note in the office file on May 20, 1980, to the effect that the officer who administered the test should provide defense counsel with a certified checklist. However, there was no indication that this had ever been done. The state argued that the question essentially was one of discovery, that "nothing new" could be had by certification, and that any violation could be "cured" at the time of trial through delivery to defendant of a certified copy of the records.

The court, noting the mandatory language of the relevant statute, allowed the motion to suppress as to any discussion of the test or its results. The state then requested a continuance for appeal purposes, which the court denied. After a short recess the state elected not to proceed, and the court dismissed the case. This appeal followed.

The statute in question is ORS 487.830, which provides in pertinent part:

"(1)   An individual who performs a chemical analysis of breath, blood, urine or saliva under ORS 487.805 or 487.835 shall prepare and sign a written report of the findings of the test which shall include the identification of the police officer upon whose request the test was administered.

"(2)   Any individual having custody of the report mentioned in this section shall, upon request of the person tested, furnish that person or his attorney, a certified copy of the report.

"* * * * *"

The state concedes in this case that an adequate demand was made by defendant under subsection (2) of the statute and that, while the state provided copies of the demanded reports, these copies were not "certified." However, it is the state's contention—with which we agree—that suppression of the test results was inappropriate.

Being akin to a discovery statute, ORS 487.830(2) requires the state to produce evidence against (or, in some cases favorable to) a defendant in a DUII case. Neither the statute itself nor the rest of the Implied Consent Law, ORS 487.805 and 487.835, provide a remedy for noncompliance. In *State v. Hockley,* 19 Or App 505, 507, 528 P2d 132 (1974), the only case dealing with this statute or its previous counterpart, we said about former ORS 483.646, "It requires no more than that defendant be assured that the person having custody of the report shall furnish him an accurate copy thereof." Nothing in the statute indicates that failure to comply strictly with its terms would cause in suppression of the test results.

While not a part of the criminal discovery statutes, ORS 487.830(2) is analogous to them. *See* ORS 135.805 *et seq.* In *State v. King,* 30 Or App 223, 566 P2d 1204 (1977), we synthesized the law on statutory discovery and set forth certain rules which we think are, by analogy, of equal importance and applicability in the case at bar. A claimed discovery violation requires that the trial court make a record of the extent of noncompliance, any explanation therefor and, most importantly, the impact of any noncompliance on the aggrieved party. *State v. Addicks,* 28 Or App

663, 560 P2d 1095 (1977). *King* and other cases[2] make it clear that, assuming there is a violation, there must be an inquiry into the degree of prejudice suffered. Prejudice for a pretrial violation is determined by a two-pronged test: (1) What was the extent of any surprise? and (2) What would the party have done differently prior to trial had he been afforded discovery? *State v. King, supra,* 30 Or App at 229. Only if a defendant has been "misled into a course of action or inaction which would not otherwise have happened," can prejudice be shown. *Id.,* at 230.

Assuming there is a violation and "substantial prejudice," *ibid.,* then the trial court should fashion an appropriate remedy. Although the court has discretion in doing that, it is even then "subject to appellate court supervision." *Id.,* at 228. "[G]enerally, an order to disclose and a reasonable continuance would be the most appropriate remedy in the majority of situations," and "the sanction of ruling nondisclosed evidence excluded from the trial court should be used only in the most extreme situations." In *King,* we specifically held that "no sanction for violation of the discovery statutes is warranted when the violation causes no prejudice in the preparation of the case for trial." *Id.,* at 230.

■ We think it is appropriate to apply these standards to the facts at bar. Defendant was provided well in advance of trial with presumably accurate copies of the intoxilyzer printout and the officer's checklist. At the pretrial hearing defendant made no claim of prejudice whatsoever; his only contention was that the statute is couched in mandatory terms and requires strict compliance. There was no contention that the copies provided were inaccurate. The state offered to "cure" any defect by production of a certified copy of the reports "up to and including the time of trial." Nothing in the record indicates that defendant would have done anything differently at the pretrial, except perhaps not making his motion to suppress, had he received certified copies.

We hold that the trial court abused its discretion in the case at bar and, in fact, erred as a matter of law by

---

[2] *State v. McMahan,* 39 Or App 599, 592 P2d 1093 (1979); *State v. Peters,* 39 Or App 109, 591 P2d 761 (1979); *State v. Graves,* 33 Or App 207, 575 P2d 1021 (1978).

failing to assess the degree of noncompliance, any explanation therefor and any prejudice suffered. The error requires reversal. *State v. Addicks, supra; State v. Castro,* 25 Or App 873, 551 P2d 488, *rev den* (1976). Suppression was a totally inappropriate remedy in light of the lack of any evidence of prejudice in the record. *State v. King, supra,* 30 Or App at 230. For similar reasons, the dismissal of the case is also reversed. *See State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975).

Defendant's motion for an order suppressing the breath test results should not have been allowed. The orders suppressing the evidence and dismissing the citation are reversed, and this case is remanded for trial.

Reversed and remanded for trial.