Argued at Pendleton, October 28; affirmed November 26, 1929

## STATE *v.* RALPH SHULL
### (282 Pac. 237)

For appellant there was a brief and oral arguments by *Mr. James A. Fee, Sr.,* and *Mr. R. I. Keator.*

For respondent there was a brief over the names of *Mr. C. C. Proebstel,* District Attorney; *Mr. Fred S. Schmidt,* Deputy District Attorney, and *Mr. Homer I. Watts,* Associate Counsel for the State of Oregon, with oral arguments by *Mr. Proebstel* and *Mr. Watts.*

HAMILTON, Act. J. It is seen from the errors assigned that appellant seeks a reversal of this cause on the ground that the court abused the discretion which is vested in judicial tribunals in controlling the trial of causes; that it consisted in allowing the district attorney to conduct the cross-examination of witnesses produced by the defendant in the manner in which he did, and in permitting the said interrogatories to be propounded. These witnesses had testified that they were acquainted with the general reputation of the defendant in the community in which he resided prior to the 10th day of August, 1928, as to being a peaceable and law-abiding citizen. It is argued in behalf of these objections that in the cross-examination of a character witness, who has testified to the good reputation of the defendant, it is error to ask such witness as to the fact of particular acts of misconduct of the defendant. It is further claimed that it is reversible error for the state to ask questions on cross-examination of character witnesses solely for the purpose of intimating to the jury that the defendant was guilty of other

charges of like nature, which the state's attorney could not prove directly, and which had no foundation within his knowledge or information.

■ It may be stated as a general rule sustained by the weight of authorities that the opposite party may cross-examine as to the grounds of a witness's knowledge or opinion, his acquaintance with the other person, and his opportunities for acquiring information, the number and names of those whom he has heard speak of him and what they said, how long and how generally favorable reports have prevailed, and the like. It is generally held that such a witness may be asked on cross-examination as to the existence of reports of particular acts and vices or associations of the other person inconsistent with the reputation attributed to him by the witness, not for the purpose of establishing the truth of such facts but to test the witness's credibility and to enable the jury to ascertain the weight to be given to his testimony. The extent of such cross-examination is in the discretion of the trial court: 3 Ency. of Ev., p. 49.

In *State v. Ogden,* 39 Or. 195 (65 P. 449), the court say:

"The rule is well settled that, when a defendant in a criminal action calls in his behalf witnesses who testify that he possesses such a general reputation as tends to negative the commission of the crime with which he is charged, these witnesses may be interrogated on cross-examination in respect to their knowledge of his prior commission of specific acts similar in character to that of which he is accused, to rebut the additional presumption of his innocence which is raised by their testimony in chief (citations). Thus, in *State v. Jerome,* 33 Conn. 265, a witness called by defendant, who was on trial for rape, testified that he was of good character, whereupon such witness was compelled on

cross-examination to answer a question as to whether a certain lewd woman had not lived for some time in the defendant's family; and it was held that no error was thereby committed. The reason for this rule is that if the party charged with the commission of a crime seeks to supplement the presumption of his innocence, which the policy of our jurisprudence affords, by testimony of general reputation necessarily adverse to the commission of the crime charged, he thereby invites a scrutiny into the issue of fact which he voluntarily precipitates, and subjects the witnesses whom he has called for that purpose to be interrogated on cross-examination in respect to their knowledge of his commission of generic offenses, not as substantive evidence of his perpetration of independent criminal acts but to test their veracity and the extent of their information upon the subject-matter to which they have testified in chief, for the purpose of controverting the general reputation which they have ascribed to him.''

Again, in *State v. Bateman*, 94 Or. 524, 530 (186 P. 5), this court, speaking through BURNETT, J., announces the following doctrine:

''Several witnesses for the defendant testified on direct examination that his reputation as a moral, law-abiding man is good. On cross-examination the prosecuting officer, over the defendant's objection, was permitted to ask each character witness in substance if he had ever heard that the defendant had taken with the person of a certain other little girl, named in the question, improper liberties similar to that described in the indictment. Both the act and name of the child were specified in the cross-interrogatory. In each instance the witness answered in the negative. The defendant contends that this was error, because thereby the state informed the jury by innuendo that the defendant was guilty of, at least charged with, other like crimes, violating in principle the doctrine of such cases as *State v. Jensen*, 70 Or. 156 (140 P. 740). Those precedents teach that with certain exceptions not

here involved it is prejudicial error to admit evidence tending to show the defendant guilty of any crime other than that charged in the indictment. If that were the question here at issue we would be compelled to award a new trial, for the precept is a just one and thoroughly grounded in the law. A distinction is to be drawn, however, between an attempt to offer direct testimony about other crimes on one hand and the limits of cross-examination on the other, although something may thereby incidentally appear indicative of other criminality on the part of the defendant. Here the moral character of the accused was drawn directly in question. He himself invited inquiry about it by putting in testimony in general terms about his good character. Certainly the prosecution legitimately could ask the general cross-interrogatory if the witness had ever heard of the defendant's doing acts of the same kind as that charged. That the cross-examiner may go further and specify the acts and the persons concerned is established by *State v. Ogden,* 39 Or. 195, and *State v. Doris,* 51 Or. 136. The doctrine is that when a defendant, as he only can, tenders his supposed good character in evidence to influence the scale in his favor, he thereby invites scrutiny and disclosure of specific, generic instances of his misconduct to depreciate the weight of the testimony of his character witnesses, although the answers elicited may incidentally impute to him other guilt. Although it is a recognized element of cross-examination, it is subject to discretionary control of the trial judge, who will restrain its abuse.''

Reaffirming the rule of law as herein announced are the cases of *State v. Harvey,* 117 Or. 466 (242 P. 440), and *State v. Matson,* 120 Or. 666, 672 (253 P. 527). Such questions are not for the purpose of proving that the defendant had committed another crime, but for the purpose of testing the ability of the witness to give accurate testimony: *State v. Harvey,* supra.

■ We conclude that no prejudicial error was committed by the court's permitting to be asked the following question:

"Do you know of his having beaten up on a girl a year or two ago and the police having to take him off?"

■ It is also one of the assignments of error relied upon by appellant that the court permitted the following interrogatory by the state:

"Did you ever hear whether he had written any bad checks or not?"

The record in this cause shows that, referring to this question, the trial court made the following announcement to the jury in regard thereto:

"Counsel asked the preceding witness concerning what he knew or had heard about defendant's having written bad checks. Now, I am going to instruct you that this question was an improper one and did not involve the trait of character that would be involved in this kind of a case, and you will entirely disregard the question asked and the answer given to it. The question, so far as the check was concerned, was improperly asked, and you will disregard that entirely and also the answer, whatever might have been made by the witness. You will entirely erase that from your minds, and not consider it in any way, as not being proper in this kind of a case."

Such action taken by the court renders such assignment unavailable, even though an error had been committed: *State v. Birchard,* 35 Or. 484, 59 P. 468.

■ Again, error is assigned in permitting the state to ask the following question of witness George Hartman:

"Supposing that he had done all these things, in that event would you still say his reputation for a law-abiding citizen was good? A. It would depend on the circumstances. Some people might exceed the speed

limit with an automobile and still be a law-abiding citizen. You want my opinion. It would depend on circumstances.''

Witness Earl. Tulloch was interrogated very similarly.

This cross-examination by the district attorney was objectionable and subject to criticism. The witness is thus asked for an opinion upon a hypothetical state of facts which are not in evidence.

In the case of *State v. Rowell* (Iowa), 154 N. W. 488, 493, upon a very similar state of facts the court say:

"He was next asked: 'Would you say that a lawyer that would borrow all the money she had in the world, over the washtub, was honest and fair, when she relied on him in the transaction, and when he was insolvent when he borrowed it?' Over the objection that this was not proper cross-examination, and is incompetent, irrelevant and immaterial, the witness answered, 'I wouldn't do it.' A similar examination of the witness Kepler was made, but that may be eliminated because he answered, in effect, that he knew nothing about the matter, and knew nothing about defendant's methods of handling trust funds, 'even now.' The witness Geiger said he had heard of the defendant's dealings with Pace, and with Dallas, and Louise French. Over the objection that it is improper cross-examination, and is incompetent, irrelevant, and immaterial, he was permitted to say that he did not think 'these dealings' could be reconciled with honesty, good methods, and integrity. The testimony admitted shows merely that the witness had heard of 'dealings' of defendant with Smyth, Pace, Dallas, and French. There is no evidence in any form as to what these dealings in fact were, or even what they were reputed to have been.

"Upon this as the only basis, the witnesses were permitted to say that these dealings were not in har-

mony with that general good reputation for honesty, integrity, fair dealing, and practicing good business methods which these witnesses had originally said defendant had. It seems to us that, even on cross-examination, a witness may not say that dealings of whose nature there is no evidence are of such character as that no man of good repute for honesty would engage in them. In the guise of cross-examination of statements as to general reputation, the witness thus gives his opinion on a hypothetical case, without indicating in any way upon what facts, or even claimed facts, this opinion rests. It is competent to ask such witness whether he has not heard that defendant has done certain things described, and, upon an answer in the affirmative, to inquire whether he regards such dealings as honest. This bears relevantly upon the weight to be given his statement on direct that defendant was of general good repute for honesty. But this leaves it to the jury to determine whether what the witness has heard, and, in spite of his opinion as to its quality, the report heard by the witness does weaken his original statement concerning the general repute of defendant. It is in the fact that the examination now under consideration took this from the jury, and that thereby the testimony as to the general reputation of defendant was weakened by the opinion of his witness as to the quality of undisclosed transactions, that the vice of the permitted examination lies.

"The questions permitted assume that defendant borrowed all the money which a weak woman like Mrs. Reed had in the world, that she had earned this money over the washtub, that she relied on defendant in the transaction with her, and that he was insolvent when he borrowed this money of her. This is as vicious as the other. In the first, the jury does not know upon what the witness bases his opinion. In the second, it is told by the prosecutor that defendant has done, or is generally reputed to have done certain things, and is then left at liberty to find that the testimony as to general good repute should have no effect, or lessened effect because the witness thinks that the things

asserted by the examiner are incompatible with a deserved or existing good general reputation. This goes beyond all license that in reason should be extended the cross-examiner.''

To the foregoing effect is *People v. Elliott* (Court of Appeals of New York), 57 N. E. 103.

■ Although the court erred in allowing the said questions to be asked, it appears that the witnesses uniformly answered that they knew nothing of the facts alluded to by the district attorney. So that it is not claimed that facts prejudicial to the defendant and inadmissible were introduced in evidence in this cause. But the assertion is made, and it is argued as a reason for reversal, that the questions referred to were so presented by the district attorney in an attempt to prejudice the rights of the defendant on the trial. It is claimed that these questions, bringing before the jury the charge by innuendo that the defendant had been guilty of other crimes, were propounded with this purpose in view. The court has carefully considered the record in this cause, and finds that the charge so made against the prosecuting officer is not sustained. After a very careful consideration of the evidence and the charges of error that are alleged to have been committed by the court, we find that this cause was carefully and fairly tried, without the commission of any error which could have been prejudicial to the rights of the defendant. This being true, that no material errors appear in the record in the trial of the cause which were or could have been prejudicial to his rights, we are governed by the statute of our state, § 1626, O. L., which provides as follows:

''After hearing the appeal the court must give judgment, without regard to the decision of questions

which were in the discretion of the court below, or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.''

It therefore becomes the duty of the court to affirm the judgment rendered in this cause.     AFFIRMED.