Argued October 20, reversed and remanded for new trial December 6, 1976, reconsideration denied January 12, petition for review denied March 1, 1977

STATE OF OREGON, *Respondent,*
*v.*
CLYDE HENLEY, *Appellant.*
(No. 20588, CA 6487)

557 P2d 33

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

Defendant was convicted, after trial by jury, of raping a ten-year-old girl. He appeals, assigning as error the allowance of cross-examination concerning an alleged prior uncharged crime.

Defendant's wife was called as a defense witness. She testified on direct examination that she had a normal sexual relationship with her husband. The following question was then asked and answered:

"Q To your knowledge does he show any sexual deviation?

"A No."

On cross-examination the following exchange occurred:

"Q Okay. On direct examination you indicated that to your knowledge your husband has shown in the past no sexual deviation whatsoever?

"A Right.

"Q Now, isn't it true that in late April of 1975 that you personally called up the police department ——

" [DEFENSE COUNSEL]: Just a minute. I don't think this has any bearing on what we're talking about today; and it's not within the scope of my direct examination.

"THE COURT: Overruled. Go ahead and ——

"BY [THE PROSECUTOR]:

"Q Isn't it true that in late April of 1975 you called up the Bend Police Department concerning a Julie Jones?

"A No.

"Q A six-year-old?

"A No.

"Q And talked with Stephanie Jackson who works over at the Bend Police Department?

"A No. No. No. No, I don't know Julie Jones or a Stephanie Jackson.

"Q Julie Jones, six-year old lived across the street concerning what happened between Julie Jones and your husband?

"A   I don't know nothing about that. I wasn't home at the time.

"Q   You weren't home at the time in April 1975?

"A   I was home in April of '75, but that day they accused him I was not home. I was in church that day.

"Q   And they accused him about Julie Jones; and you called the Bend Police Department?

"[DEFENSE COUNSEL]: We're getting way beyond the scope of my direct examination.

"THE WITNESS: I did not call them.

"THE COURT: Just a minute. Overruled.

"BY [THE PROSECUTOR]:

"Q   Your husband was accused of something involving a six-year old?

"A   I did not call the police department. The woman, the mother, is the one that called the police department, not me.

"Q   So, Stephanie Jackson would not say that she personally talked to you about that?

"A   No. She didn't talk to me about that.

"Q   But you do know about that complaint against your husband?

"A   I heard about it. I'm not going to say — It's all hearsay, so I don't know for sure. That's all I know. I wasn't home the day it happened. So, I can't say. I'm just going by what's hearsay. I can't prove it.

"Q   And this was the girl across the street?

"A   I don't know."

■   Generally, evidence of other crimes committed by a defendant is inadmissible to show that he is the type of person who may be expected to commit the charged offense. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975).[1] The state contends that this general rule is

---

[1]Professor Wigmore, however, justifies the exclusion of evidence of other crimes as follows:

"* * * It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal — whether judge or jury — is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * *" 1 Wigmore on Evidence 646, § 194 (3rd ed 1940).

inapplicable here because the defendant placed his character in issue by his wife's testimony that to her knowledge he shows no sexual deviation. Therefore, the state argues, evidence of other sexual offenses was admissible to prove that defendant has a deviant sexual character.

■■ The prosecution may introduce evidence of defendant's bad character as circumstantial evidence of guilt only if the defendant first opens the door by placing his character "clearly and expressly in issue." *State v. Ewing,* 174 Or 487, 503, 149 P2d 765 (1944); *See* McCormick on Evidence 455, § 191 (2nd ed 1972). It is well settled in Oregon that a defendant's character may be proved only by evidence of his general reputation in the community. *State v. Curtis,* 20 Or App 35, 530 P2d 520, *rev den* (1975).

■ At best, the testimony of defendant's wife may be viewed as an expression of her personal opinion regarding defendant's sexual character or as a statement that defendant has not engaged in deviant conduct in the context of the marital relationship. Either way, the testimony was irrelevant and incompetent as character evidence, and therefore objectionable. Such evidence is insufficient to "clearly and expressly" put defendant's character into issue.

■ Furthermore, even if defendant's character had been placed in issue, the cross-examination was not proper. Just as defendant may not introduce evidence of specific praiseworthy acts, McCormick, *supra* at 455, § 191, the prosecution may not prove defendant's bad character through evidence of specific acts. *See, State v. Curtis, supra; State v. Ewing, supra,* 174 Or at 503; McCormick, *supra* at 459, § 192; 1 Wigmore on Evidence 643, § 193 (3rd ed 1940). A witness to reputation for good character may be asked about awareness of other crimes which the defendant may have committed, and whether the defendant's reputation would be affected thereby, *State v. Shull,* 131 Or 224, 282 P 237, 71 ALR 1498 (1929), but the cross-

examination herein was not for that purpose or in that form. The prosecutor's questions were calculated to elicit evidence of a prior reported sexual misdeed, or at least to imply that such involvement had occurred.[2] Such questions were improper and should not have been allowed.

In sum, the entire line of questioning was extraneous. Had the prosecutor objected, then the subject would either have been excluded or would have been admitted in proper form. If admitted, the prosecutor could have cross-examined in proper form. The tactic of allowing an inadmissible tidbit into evidence without objection in the hope of driving a bulldozer through a supposedly open door, is not a practice to be encouraged.[3]

In view of the highly prejudicial nature of the improperly admitted evidence and the possibility that without it there would have been a different result, we must reverse. *State v. McLean,* 255 Or 464, 468 P2d 521 (1970).

Reversed and remanded for new trial.

---

[2] "The rule permitting the cross-examiner to ask the character witness whether he 'has heard' or knows of other particular crimes of accused involving the same trait is pregnant with possibilities of destructive prejudice. The mere asking by a respected official of such a question, however answered, may well suggest to the jury that the imputation is true. * * *" (footnotes omitted). McCormick on Evidence, 457-58, § 192 (2nd ed 1972).

[3] *State v. Rowley,* 6 Or App 13, 18, 485 P2d 1120, *rev den* (1971), relied upon by the state, affirmed where there was similar direct and cross testimony by defendant regarding credibility, but that holding should not be expanded without good reason.