Argued and submitted April 8, reversed and
remanded for new trial October 5, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## BILLY EUGENE DAVIS,
*Appellant.*

(No. 10-79-11533, CA 18362)

634 P2d 279

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Defendant was convicted by a jury of first degree rape, ORS 163.375. The alleged victim was his daughter's 13-year-old friend. Defendant assigns as errors the admission of testimony concerning prior sexual contact between defendant and young girls other than the alleged victim and the admission of a photograph taken by defendant of his daughter posing in the nude. We reverse.

The state concedes error in the admission of the photograph of defendant's daughter, but argues that the error was harmless. Because on retrial that error is not likely to recur, we do not discuss that contention.

In *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975), the Supreme Court summarized the reasons for the general rule excluding evidence of other crimes or bad acts:

"The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. See *Trook v. Sagert,* 171 Or 680, 688, 138 P2d 900 (1943), and *State v. Kristich,* 226 Or 240, 244, 359 P2d 1106 (1961). It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice. McCormick on Evidence 438-39, § 185 (2d ed 1972). See also *State v. Zimmerlee,* 261 Or 49, 54, 492 P2d 795 (1972), and *State v. Harrison,* 253 Or 489, 491, 455 P2d 613 (1969).

"For this reason it is the general rule in criminal cases that the state may not offer evidence that the defendant was guilty of other crimes in addition to the crime for which he is charged. Although evidence that a defendant has committed other crimes may have some probative value in that it may be 'more likely' that such a person committed the crime in question, it is generally recognized that the danger of unfair prejudice to the defendant outweighs any such probative value. See McCormick on Evidence, *supra* at 447, § 190. * * *
" * * * * * *

"Most, if not all, of the exceptions are based implicitly upon the idea that evidence of other crimes may be relevant for some purpose other than to show the probability

that the defendant committed the crime for which he is being tried because he had also committed other crimes. See McCormick, *supra* at 447, § 190. Thus, these exceptions involve cases in which the courts recognize, in effect, that the probative value of such evidence when offered for such a purpose, outweighs the danger of prejudice to the defendant."

*See also State v. Hockings,* 29 Or App 139, 145, 562 P2d 587, *rev den* 279 Or 301 (1977).

■　While evidence of other crimes or sexual acts with others than the victim may 'tend to prove that defendant has a lustful disposition and is, therefore, more likely to have committed the crime in question, such evidence is, with limited exceptions, inadmissible. *State v. Pace,* 187 Or 498, 502, 212 P2d 755 (1949); *State v. Urlacher,* 42 Or App 141, 144, 600 P2d 445 (1979). In cases involving sex crimes, the inflammatory nature of the crime itself renders the potential for prejudice high, and the exclusionary rule is strictly applied. *Youngblood v. Sullivan,* 52 Or App 173, 176-177, 628 P2d 400, *rev den* 291 Or 368 (1981); *State v. Sicks,* 33 Or App 435, 438, 576 P2d 834 (1978).

Exceptions to the general rule excluding evidence of prior sexual acts between defendant and others have been recognized in two circumstances: when the prior acts and those of which the defendant stands accused are so similar as to indicate a *modus operandi* which identifies the defendant as the probable perpetrator of the crime charged, or to rebut a contention by the defendant that admitted sexual acts were consented to by the victim. *State v. Johann,* 34 Or App 363, 366, 578 P2d 810, *rev den* 283 Or. 235 (1978); *Youngblood v. Sullivan, supra,* 52 Or App at 177. In the present case, defendant denied sexual intercourse with the victim, and neither identity nor consent were in issue.

■　The state, however, contends defendant opened the door to admission of the disputed testimony by placing his character in issue by giving testimony on direct examination regarding his skills as a father,[1] by his testimony on

---

[1] "Q. [Defense attorney] Did you live with your daughter alone after your first divorce?

cross-examination that when he told several girls that he wanted them to be his girlfriends he was "joking around,"[2] and by offering testimony of two defense witnesses to the effect that they had never seen inappropriate sexual contact between defendant and other girls the same age as the victim. The trial court concluded on the state's urging that that evidence provided an adequate basis for the admission of rebuttal testimony concerning defendant's character. The state then offered over defendant's objection the testimony of six young girls, including his daughter, concerning particular prior acts of sexual misconduct by him.

"A. [Defendant] No.

"Q. So this was the first time you had been living alone with your daughter, was after your second divorce?

"A. Yes.

"Q. How did you guys get along?

"A. I thought we got along beautiful.

"Q. Okay.

"Do you enjoy — you people seem to enjoy each other's company.

"A. I thought so.

"Q. Did you consider yourself a — what kind of a father did you consider yourself? A strict one, a lenient one or what?

"A. It depends on what come up.

"Q. I see. It was kind of a not very good question to ask you. It gives you a chance to say good things about yourself.

"What do you mean by that, though.

"A. Well, it depended on what we was trying to do. I tried most of the time to enjoy my daughter, to be with her and try to understand what was happening.

"Q. Okay.

"Were there ever any times when you felt badly about your fathering or parenting skills like you had made some mistake or something? For example, overdiscipline.

"A. I think everybody does some time or another.

"Q. So you don't think you are the perfect parent necessarily, right?

"A. No.

"Q. Now, do you remember how your daughter did in school?"

[2] "Q. [Prosecutor] Was it true or was it not true that while Tracy was living in your home, you told her that you wanted her to be your girl friend?

"A. [Defendant] Yes, that's true.

In *State v. Ewing,* 174 Or 487, 503, 149 P2d 765 (1944), the Supreme Court noted that when defendant puts his character clearly and expressly in issue, evidence of bad character is admissible. In *Ewing,* the defendant, charged with sodomy, denied all charges. On direct examination he testified: "I don't know any reason why I should be doing such a thing," and later, during cross-examination, he said: " * * * [M]y makeup is such a nature that I would not attempt such a thing or think about doing such a thing." The prosecution was permitted over objection to offer in rebuttal testimony of four witnesses concerning specific

---

"Q. On how many different occasions did you tell her that?

"A. I couldn't say for sure.

"Q. Did you tell her that more than once?

"A. Yes.

"Q. More than twice?

"A. Yes.

"Q. Ten times?

"A. I don't know.

"Q. Many times?

"A. I have told her several.

"Q. Ever told her that in the presence of other persons?

"A. Sure.

"Q. When you told us that you were trying to be like a father to her, did you think in your own mind that a father is also romantically involved with his daughter if Tracy was basically like your daughter?

"MR. HANSEN: Your Honor, I don't think I understand that question. I object to that unless it's clearer.

"THE COURT: Overruled.

" * * * * *

"By Mr. Lorts:

"Q. Then why did you tell her that you wanted her to be your girl friend?

"A. Because I tell all the girls that. She is no exception.

"Q. Did you mean it?

"A. No, not really.

"Q. Why did you say it?

"A. I was joking around.

"Q. Do you joke around all the time like that?

"A. I am joking around a lot."

acts of sexual misconduct with others. The Supreme Court held that the defendant's testimony did not put his character in issue, but, even if it had, the prosecution was not entitled to prove specific acts of sexual misconduct with others. The court stated:

"To admit evidence of bad character against an accused it is necessary that he shall already have put his character clearly and expressly in issue. Underhill, Crim. Ev., 4th ed., § 167, p. 293; *People v. Hinksman,* 192 N. Y. 421, 85 N. E. 676. An answer by a defendant on cross-examination to the effect, in substance, that he is not that kind of man does not put his character clearly and expressly in issue, but if character had been put in issue, the prosecution would not have been entitled to prove other specific misconduct by the defendant with other persons in this type of case. * * * Again, it is provided that a witness may be impeached by certain specified methods, 'but not by evidence of particular wrongful acts,' except that former conviction of crime may be shown. O. C. L. A. § 4-711 [now ORS 45.600]. Concerning that statute, this court has said that it

"' * * * states the law plainly and does not permit evidence of 'particular wrongful acts,' except it may be shown that the witness has been convicted of a crime. If other particular wrongful acts on the part of a witness, although the witness may be a defendant in the case, are permitted to be shown, then it would necessitate the investigation of the matters with which the witness is accused and introduces collateral cases. A defendant witness cannot be cross-examined at large to other offenses: State v. Deal, 52 Or. 568 (98 Pac. 165); State v. Holbrook, 98 Or. 43, 45, 63 (188 Pac. 947, 192 Pac. 640, 193 Pac. 434).' *State v. Motley,* 127 Or. 415, 272 P. 561. And see *State v. White,* 48 Or. 416, 87 P. 137; *Redsecker v. Wade,* 69 Or. 153, 134 P. 5, 138 P. 485, Ann. Cas. 1916A, 269.
" * * * * * *

"The cross-examination to which we have referred was improper either for the purpose of showing bad character, or for the purpose of disproving defendant's statement that he would 'never think of such things.' When the State went beyond cross-examination and in rebuttal introduced evidence of four witnesses concerning specific acts of misconduct, more serious error was committed." 174 Or at 503-504.

Here, defendant's direct testimony that he had a good relationship with his daughter and was a good father did not "clearly and expressly" put his character in issue in any way relevant to his possible guilt or innocence of the crime charged. It did not "open the door" to impeachment evidence of bad character. Similarly, his testimony on cross-examination that he was joking when he asked the victim and others to be his girlfriends did not place his character in issue, but if it did, it did not open the door for impeachment evidence of bad character by evidence of specific acts of sexual misconduct. ORS 45.600;[3] *State v. Ewing, supra,* 174 Or at 504. While the state may introduce evidence of a defendant's bad character if the defendant in his case-in-chief opens the door by offering evidence of his good character, as we stated in *State v. Jackson,* 31 Or App 645, 649, 571 P2d 523 (1977), *rev den* 281 Or 323 (1978), the state " * * * may not open its own door."

Finally, the state contends that by eliciting from two defense witnesses testimony that they had observed defendant playing or wrestling with his daughter, the victim and other young girls, but had seen no inappropriate contact between them, defendant had clearly and expressly placed his character in issue. The testimony elicited from these witnesses is like that in *State v. Henley,* 27 Or App 607, 557 P2d 33 (1976), *rev den* 277 Or 237 (1977), where the defendant was charged with rape of a ten-year-old girl. His wife, as a defense witness, testified on direct examination that to her knowledge the defendant showed no signs of sexual deviation. The prosecution on her cross-examination asked whether she had knowledge of a specific instance in which a complaint had been made against her husband regarding a six-year-old neighbor girl. This court held that the cross-examination was improper. We stated:

"Furthermore, even if defendant's character had been placed in issue, the cross-examination was not proper. Just

---

[3] ORS 45.600 provides:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth is bad or that his moral character is such as to render him unworthy of belief; but he may not be impeached by evidence of particular wrongful acts, except that it may be shown by his examination or by the record of the judgment, that he has been convicted of a crime."

as defendant may not introduce evidence of specific praiseworthy acts, McCormick, *supra* at 455, § 191, the prosecution may not prove defendant's bad character through evidence of specific acts. *See, State v. Curtis, supra; State v. Ewing, supra,* 174 Or at 503, McCormick, *supra* at 459, § 192; 1 Wigmore on Evidence 643, § 193 (3rd ed 1940). A witness to reputation for good character may be asked about awareness of other crimes which the defendant may have committed, and whether the defendant's reputation would be affected thereby, *State v. Shull,* 131 Or 224, 282 P 237, 71 ALR 1498 (1929), but the cross-examination herein was not for that purpose or in that form. The prosecutor's questions were calculated to elicit evidence of a prior reported sexual misdeed, or at least to imply that such involvement had occurred. Such questions were improper and should not have been allowed." (Footnote omitted.)

In the present case, the two witnesses' testimony concerning specific instances of defendant's good conduct in a group situation was irrelevant to the charge of forcible rape and was incompetent as character evidence. Both good and bad character may be proved only by evidence of general reputation. Had the state objected to the testimony of these witnesses, it should have been excluded. In any event, their testimony did not open the door to the state's six witnesses to testify as to specific instances of improper sexual contact with them by the defendant. "The tactic of allowing an inadmissible tidbit into evidence without objection in the hope of driving a bulldozer through a supposedly open door, is not a practice to be encouraged." *State v. Henley, supra,* 27 Or App at 612.

Likewise, the state's contention that the evidence of prior sexual misconduct with the six young girls was admissible to impeach defendant's credibility is without merit. Neither defendant's ability as a father nor his attitude toward children other than the victim was relevant to the substantive issues in the case; both were thus collateral. *See State v. Johnson,* 277 Or 45, 48, 559 P2d 496 (1977); *see also* McCormick on Evidence 99, § 47 (2d ed 1972).

While the state is correct that it was entitled to show that the defendant's sexual behavior toward the victim was not made in jest, but was made with the intent to

induce her to have sexual relations with him, *State v. Start.,* 65 Or 178, 186, 132 P 512 (1913); *State v. Ewing, supra,* 174 Or at 497 and cases cited therein, it was not entitled to establish a similar intent toward others by producing the evidence of the non-victim witnesses. *State v. Ewing, supra,* 174 Or at 501, *State v. Sicks, supra,* 33 Or App at 438.

Reversed and remanded for new trial.