Argued and submitted March 29, affirmed June 2, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# DANIEL WAYNE DIBALA,
*Respondent.*

(97CR1438FE; CA A101012)

984 P2d 302

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Michael V. Phillips argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

## BREWER, J.

The state appeals from a pretrial order excluding evidence of defendant's prior uncharged misconduct from his trial on two counts of sex abuse in the first degree. ORS 163.427. The issue on appeal is whether evidence that defendant committed acts of sexual abuse in 1986 was admissible to prove that he acted knowingly during the current incident. We review for errors of law, ORS 138.220, and affirm.

On July 30, 1996, defendant took the alleged victims, two 12-year-old boys in his care, for a ride in his truck to go swimming. While en route, he allowed them to take turns sitting on his lap to steer the truck, although he retained control over the accelerator and brake. The boys alleged that defendant had an erection and moved his pelvis up and down so that it would rub against their buttocks.

Before trial, defendant filed a motion to exclude evidence of acts of sexual abuse he had committed in 1986. In that incident, defendant admitted to police that he had fondled the clothed genitals of two boys, ages eight and seven, while he was babysitting them. The first act occurred in defendant's bed. The second occurred in the sleeping victim's bed. Defendant was not prosecuted at that time.

At the pretrial hearing, defendant's attorney stated that defendant's version of events in the currently charged incident is that, although he did allow the boys to steer while seated in his lap, he did not have an erection and did not rub against the children with his pelvis as alleged. In his memorandum in support of the motion, defendant asserted that evidence of the 1986 incident is inadmissible because it improperly suggested that he has a propensity to commit the currently charged acts but is not otherwise relevant. Defendant further contended that the uncharged misconduct evidence is inflammatory and unfairly prejudicial. At trial and on appeal, the state first responded that the evidence is both relevant to defendant's intent and not unduly prejudicial. Second, the state argued that even if it *is* prejudicial, OEC 404(4), added to the Evidence Code by Senate Bill 936, required admission of the evidence of prior sexual abuse.

The trial court granted the defendant's motion, reasoning as follows:

"I am going to—the position or the ruling I'm going to make is that it's not admissible in the event that the defense position is that this just didn't happen. If, through the course of the trial, the defense position changes and becomes that it may have happened but I wasn't intending it for sexual purpose, then I would obviously reconsider my ruling at that point because then I think intent is much more relevant than it is if you are saying that the factual predicate did not occur."

At the hearing, the court also noted the dissimilarities between the incidents, but did not expressly treat them as dispositive:

"I also think that the 1986 matters are dissimilar in terms of—they're similar because they're boys. They're dissimilar because of the ages of the boys and they're dissimilar as to the factual predicate as to how the abuse allegedly occurred."

Ultimately, the court concluded that the evidence was "too prejudicial to allow the admission."

The trial court then addressed the state's contention that OEC 404(4) required admission of the evidence:

"And as far as 936, I am—I think I have no clue as to what the appellate courts are going to do with 936 but at this point it did occur, that is it became effective in December of 1996, which was after the occurrence dates of these events, and I believe that there is still somewhat of a balancing test of this being allowed so I'm going to not apply 936."

In its first assignment of error, the state argues that the trial court was wrong to exclude the evidence under OEC 404(3). We disagree.

OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

 Evidence of a defendant's bad character or propensity to commit a crime is inadmissible unless and until the defendant, through the introduction of evidence, has placed either in issue. *See* OEC 404(2)(a); *State v. Davis*, 54 Or App 133, 136, 634 P2d 279 (1981). That rule is intended to minimize the risk that the jury will decide the issue of guilt on an improper basis when the potential for prejudice is high. *State v. Pinnell*, 311 Or 98, 105-06, 806 P2d 110 (1991). Nevertheless, OEC 404(3) permits the admission of evidence of uncharged sexual misconduct for other relevant purposes in criminal prosecutions. In this case, the state asserts that the evidence is relevant to prove knowledge, the mental element of the charged offenses.

 The Oregon Supreme Court has adopted a six-part test to determine the admissibility of other misconduct evidence offered to show a defendant's intent or knowledge:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?" *State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986).

With respect to the first five elements—the logical relevance determination—we review for errors of law. *State v. Mills*, 153 Or App 611, 614-15, 958 P2d 896 (1998), *rev den* 328 Or 275 (1999). The trial court may reach the sixth element—the balancing test—only if the answer to each of the first five questions is "yes." *State v. Rinkin*, 141 Or App 355, 368, 917 P2d 1035 (1996). If that occurs, we review the trial court's evaluation under the sixth step for abuse of discretion. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987) ("The judge

errs if the judge fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion.").

Although we come to the same conclusion reached by the trial court, our evaluation of the relevance of the prior misconduct evidence under *Johns* is not identical. We begin with the first two elements of that test. It is clear that both the present charged acts—two counts of sexual abuse in the first degree—and the prior, uncharged acts, which also could have been charged as sexual abuse in the first degree, require intent or knowledge.[1] Therefore, the first two *Johns* relevance elements are satisfied. Because both incidents, if proven, would constitute sexual abuse of children in the defendant's care, the evidence likewise satisfies the fourth *Johns* inquiry, which asks whether the acts are of the same or similar "type."

With respect to the third question, the trial court questioned whether the victims were in the same class because they were of different ages than the 1986 victims. The state argues that the class of victims inquiry does not require that the victims be identical in every respect. That argument is correct. *See, e.g., State v. Walters*, 99 Or App 570, 573, 783 P2d 531 (1989), *rev'd on other grounds* 311 Or 80,

---

[1] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

Although the parties and the trial court framed the relevant inquiry in terms of defendant's *intent*, the indictment alleged that defendant *knowingly* subjected the victims to abuse. The distinction is unimportant for purposes of analysis under OEC 404(3), since a requirement to prove either "knowledge" or "intent" may furnish a basis for admission of prior misconduct evidence.

The applicable definitions for elements of the offense of first-degree sexual abuse are as follows. "Knowingly," in the context of criminal offense, means that a person acts with awareness that his or her conduct is of a nature so described or that a circumstance so described exists. ORS 161.085(8). ORS 163.305(6) provides that " '[s]exual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor *for the purpose of* arousing or gratifying the sexual desire of either party." (Emphasis added.) Buttocks may constitute "intimate parts." *State v. Buller*, 31 Or App 889, 891, 571 P2d 1263 (1977). *See also State v. Woodley*, 306 Or 458, 760 P2d 884 (1988) (construing ORS 163.305(6)).

804 P2d 1164, *cert den sub nom Walters v. Oregon*, 501 US 1209 (1991) ("victims were of similar age, degree of maturity and vulnerability and, therefore, were in the same class"). In *State v. Wert*, 144 Or App 581, 585, 583, 927 P2d 1103 (1996), *rev den* 325 Or 369 (1997), for example, we described the class as "neighbor children interested in defendant's airplane," notwithstanding the fact that the children involved were three years apart in age. Here, the victims in the two incidents were also similar enough to constitute a class: children in the defendant's care. Furthermore, the ages of the victims—12-year-olds in 1996 and a seven- and an eight-year-old in 1986—are nearly as close as those of the children in *Wert*. We conclude that the victims in the 1986 incident are in the same class as the alleged victims in the charged offense.

■ Nevertheless, we conclude that the trial court did not err in excluding evidence of the 1986 conduct because the answer to the fifth *Johns* inquiry—whether the physical elements of the two acts are similar—is no. When analyzing prior bad acts evidence under *Johns's* "physical elements" prong, the trial court must consider both the similarities and the dissimilarities of the incidents:

> "First, the trial judge must find that there are significant similarities in the physical elements of the two crimes. If that test is met, then the trial judge must consider the differences between the physical elements of the two crimes. The differences may be minimal * * *. On the other hand, the differences may be so great that they overwhelm the similarities." *State v. Pratt*, 309 Or 205, 214, 785 P2d 350 (1990).

Here, both sets of crimes involved minor boys in defendant's care and both were sex offenses. However, the similarities in this case between the physical elements of the two sets of offenses have no legal significance under OEC 404(3) unless they have a tendency to make it more probable that defendant acted knowingly. *State v. Sheets*, 160 Or App 326, 331, 981 P2d 815 (1999). In *Sheets*, the defendant had, in an earlier incident, attempted intercourse with an 11-year-old child. *Id.* at 2. In the charged incident, the defendant allegedly "belly bounc[ed]" a different child while engaging in sexual contact with her. *Id.* at 331 n 5. In each case, the defendant was providing child care for the victim when the sexual

conduct occurred. *Id.* at 328. We held that the "specific circumstances" surrounding the abuse of the victims in the two incidents differed sufficiently so as to make the earlier conduct irrelevant as evidence of defendant's intent in the later incident. *Id.* at 331.

Here, as in *Sheets*, the physical elements of the two incidents are not so similar as to outweigh their differences. In the 1986 incident, defendant did not place the children on his lap nor did he rub an erection against them. The 1986 incidents took place in bedrooms; the current incident, in a truck. In the 1986 incident, defendant touched the victims' clothed genitals with his hands; in 1996, he is alleged to have touched the boys' clothed buttocks with a clothed erection and his pelvis. There was no evidence whether or not the defendant had an erection during the 1986 incidents. If he did, there was no evidence that he touched those victims with it.

The challenged evidence was not probative as to defendant's *knowing* conduct with respect to the alleged victims in this case, because it did not make it more or less probable that defendant *knew* that he was sexually abusing the children. As in *Sheets*, the primary tendency of the other bad acts evidence offered by the state in this case was "to show that defendant is the sort of person who sexually assaults" children. *Id.* at 331. Therefore, we conclude that the trial court was correct to exclude evidence of defendant's 1986 sexual misconduct.[2]

█ We next turn to the state's second assignment of error, in which it argues that the trial court erroneously refused to apply OEC 404(4).[3] That rule, which applies to all

_____

[2] The state correctly observes that the trial court concluded that the 1986 misconduct *was* relevant to defendant's intent in the current episode. The trial court concluded that the relevance of the earlier conduct was limited because of the defendant's version of events but excluded it because it was unduly prejudicial under OEC 403. Although we agree that the evidence was inadmissible, we do not reach the balancing test that is the sixth element of the *Johns* test because of our own conclusion that the evidence failed the physical similarity element.

[3] Defendant argues that the state did not preserve the claim of error because it argued to the trial court that OEC 404(4) overrides OEC 403's balancing requirement, while on appeal the state argues that the balancing requirement is overridden *except* where the state or federal constitution requires otherwise. That argument is not well taken. In its memorandum to the trial court, the state

criminal proceedings after December 5, 1996, provides that the defendant's other bad acts, *if relevant*, are admissible except as required by OEC 403 (to the extent required by the state or federal constitutions), OEC 406 through OEC 412, privilege and hearsay rules, and the state and federal constitutions. The rule "does not change the traditional standards for determining the relevance of evidence that might tend to prove the defendant's propensity to commit the crime." *State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999) (confirming *Johns* test's continuing validity after enactment of OEC 404(4) in determining logical relevance of prior bad acts). Because we have concluded that the defendant's prior bad acts are not logically relevant to the charged offenses, OEC 404(4) does not require their admission. *Sheets*, 160 Or App at 331 n 5; *see also State v. Pyle*, 155 Or App 74, 82, 963 P2d 721, *rev den* 328 Or 115 (1998).

Affirmed.

---

incorporated OEC 404(4) in its entirety. That rule specifically states that the new rule of admissibility is subject to constitutional restraints. The state also cited OEC 404(4) at the pretrial hearing. We conclude that this record is sufficient to preserve the state's argument. *State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988) (raising the *issue* and *source* of error are the most important elements of preservation).